**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., MS NOW Cable, LLC, POLITICO LLC, et al.,<br>Plaintiffs,<br>v.<br>DONALD J. TRUMP, et al.,<br>Defendants. | Case No. 1:26-cv-03287-TJK |

**BRIEF OF PROPOSED AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, THE WHITE HOUSE CORRESPONDENTS' ASSOCIATION, AND 49 MEDIA ORGANIZATIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**


Simon Latcovich (DC Bar No. 980319)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Phone: 202.434.5967
Email: slatcovich@wc.com

Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record*
Lisa Zycherman (DC Bar No. 495277)
Gabriel Rottman (DC Bar No. 992728)
Marietta Catsambas (DC Bar No. 1617526)
Allyson Veile (DC Bar No. 1766038)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Email: bruce.brown@rcfp.org

*Counsel for Proposed Amici Curiae*

**CORPORATE DISCLOSURE STATEMENTS**

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The White House Correspondents' Association certifies that it is a nonprofit 501(c)(3) organization with no parent company, no subsidiaries, and no stock.

Advance Local Media LLC is an indirect wholly owned subsidiary of Advance Publications, Inc. There is no publicly traded company that directly or indirectly owns 10% or more of the stock or voting interests of Advance Publications, Inc.

American Broadcasting Companies, Inc. is an indirect, wholly-owned subsidiary of The Walt Disney Company, a publicly traded corporation.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law. It is not publicly traded.

The Atlantic Monthly Group LLC is a privately-held media company, owned by Emerson Collective and Atlantic Media, Inc. No publicly held corporation owns 10% or more of its stock.

Axios Media Inc. is a privately owned company, and no publicly held company owns 10% or more of its stock.

Bloomberg News is published by Bloomberg L.P., which is a limited partnership. Its general partner is Bloomberg Inc., which is privately held. No publicly held corporation owns 10 percent or more of Bloomberg L.P.'s limited partnership interests.

Boston Globe Media Partners, LLC, is a privately held company. No publicly held corporation owns 10% or more of its stock.

CBS Broadcasting Inc. is an indirect, wholly owned subsidiary of ViacomCBS Inc. ViacomCBS Inc. is a publicly traded company. National Amusements, Inc., a privately held

company, beneficially owns the majority of the Class A voting stock of ViacomCBS Inc. ViacomCBS Inc. is not aware of any publicly held entity owning 10% or more of its total common stock, i.e., Class A and Class B on a combined basis.

The Center for Investigative Reporting, Inc. is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Chicago Public Media is a not for profit corporation. It has no parent entity and issues no stock. It owns and operates WBEZ in Chicago, one of the founding NPR member stations, as well as simulcast stations throughout Illinois and Indiana and is the publisher of the Chicago Sun-Times.

Condé Nast is a direct, wholly owned subsidiary of Advance Magazine Publishers Inc. Advance Magazine Publishers Inc. is an indirect, wholly owned subsidiary of Advance Publications, Inc. There is no publicly traded company that directly or indirectly owns 10% or more of the stock or voting interests of Advance Publications, Inc.

Courthouse News Service is a privately held corporation with no parent corporation and no publicly held corporation holds more than 10 percent of its stock.

The Daily Beast Company LLC is a wholly-owned indirect subsidiary of IAC/InterActiveCorp, a publicly traded company.

Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News Corporation, a publicly held company. Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones. News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco,

LLC. No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

The Financial Times Limited is a private company, and is a wholly-owned subsidiary of private company Financial Times Group Limited which is wholly owned by private company Nikkei Inc. No publicly held corporation owns 10% or more of the stock of The Financial Times Limited.

Forbes Media LLC is a privately owned company and no publicly held corporation owns 10% or more of its stock.

Fox News Network, LLC (DE) is directly, wholly-owned by Fox Television Stations, LLC (DE) which is directly, wholly-owned by Fox Television Holdings, LLC (DE), which is directly, wholly-owned by Foxcorp Holdings LLC (DE), which is directly, wholly-owned by Fox Corporation (DE) (the ultimate parent and publicly-owned entity). All of the entities except Fox Corporation are privately held entities.

Guardian US's legal entity is Guardian News & Media LLC, a company incorporated in Delaware, whose registered office is at 315 West 36th St, New York, NY 10018. Guardian News & Media LLC's parent corporation is Guardian News & Media Limited, a private company. No publicly held corporation owns 10% or more of Guardian US's stock.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

TheHuffingtonPost.com, Inc. (d/b/a "HuffPost") is an indirectly held subsidiary of BuzzFeed, Inc., a publicly traded company (NASDAQ:BZFD). No publicly held company owns 10% or more of BuzzFeed's stock.

The Intercept Media, Inc., publisher of The Intercept, is a non-profit non-stock corporation. It has no parent, subsidiaries, or affiliates.

The Knight First Amendment Institute is a nonprofit organization. It does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

KQED Inc. is a nonprofit public benefit corporation. No entity or person has an ownership interest of 10 percent or more of KQED Inc.

LAist is operated by Southern California Public Radio, a nonprofit organization wholly owned by its nonprofit parent support organization, American Public Media Group, the largest station-based public radio organization in the U.S.

Los Angeles Times Communications LLC is wholly owned by NantMedia Holdings, LLC.

The McClatchy Company, LLC is privately owned by certain funds affiliated with Chatham Asset Management, LLC and does not have publicly traded stocks.

MediaNews Group Inc. is a privately held company. No publicly-held company owns ten percent or more of its equity interests.

Minnesota Public Radio is owned by its nonprofit parent support organization, American Public Media Group, the largest station-based public radio organization in the U.S. Neither APMG nor its subsidiaries issue stock.

The National Press Club is a not-for-profit corporation that has no parent company and issues no stock.

National Public Radio, Inc. is a privately supported, not-for-profit membership organization that has no parent company and issues no stock.

Comcast Corporation and its consolidated subsidiaries own 100% of the common equity interests of NBCUniversal Media, LLC.

The New Republic is a privately-held company owned by Win McCormack. No publicly held company owns ten percent or more of its equity interest.

New York Public Radio is a privately supported, not-for-profit organization that has no parent company and issues no stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including nearly 2,200 diverse news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Newsday LLC is a Delaware limited liability company whose members are Tillandsia Media Holdings LLC and Newsday Holdings LLC. Newsday Holdings LLC is an indirect subsidiary of Cablevision Systems Corporation. Cablevision Systems Corporation is (a) directly owned by Altice USA, Inc., a Delaware corporation which is publicly traded on the New York Stock Exchange and (b) indirectly owned by Altice N.V., a Netherlands public company.

Informed California Foundation, d/b/a Open Vallejo, is a California nonprofit corporation and an educational public charity organized pursuant to section 501(c)(3) of the U.S. Code. It has no parent corporation and issues no stock.

Penguin Random House LLC is a limited liability company whose ultimate parent corporation is Bertelsmann SE & Co. KGaA, a privately-held company.

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Reuters News & Media Inc. is a Delaware corporation whose parent is Thomson Reuters U.S. LLC, a Delaware limited liability company. Reuters News & Media Inc. and Thomson Reuters U.S. LLC are indirect and wholly owned subsidiaries of Thomson Reuters Corporation, a publicly-held corporation, which is traded on the New York Stock Exchange and Toronto Stock Exchange. There are no intermediate parent corporations or subsidiaries of Reuters News & Media Inc. or Thomson Reuters U.S. LLC that are publicly held, and there are no publicly-held companies that own 10% or more of Reuters News & Media Inc. or Thomson Reuters U.S. LLC shares.

The Seattle Times Company: The McClatchy Company, LLC owns 49.5% of the voting common stock and 70.6% of the nonvoting common stock of The Seattle Times Company.

Slate is part of The Slate Group, a wholly owned subsidiary of Graham Holding Company.

USA Today Co., Inc., formerly known as Gannett Co., Inc., is a publicly traded company and has no affiliates or subsidiaries that are publicly owned.

Lupa Systems LLC is the parent company of Vox Media Group, LLC. No publicly held corporation owns 10% or more of the stock of Lupa Systems LLC.

WAMU 88.5, one of the founding NPR stations, is a broadcast licensee of American University's Board of Trustees. American University is a tax-exempt, nonprofit corporation. It has no parent entity and issues no stock.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

WBUR is owned and operated by The Trustees of Boston University, which holds the station's broadcast license. BU is a tax-exempt, nonprofit corporation. It has no parent entity and issues no stock.

WNET is a not-for-profit organization, supported by private and public funds, that has no parent company and issues no stock.

## TABLE OF CONTENTS

**Page:**

CORPORATE DISCLOSURE STATEMENTS ..... i

TABLE OF AUTHORITIES ..... ix

INTEREST OF AMICI CURIAE ..... xiii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. White House correspondents work in spaces protected by the nonpublic forum doctrine and they have historically played an essential role in informing the public about the office of the presidency. ..... 2

II. Stripping journalists and news outlets of their rights because of perceived editorial viewpoint violates decades of Supreme Court jurisprudence and is impermissible in any type of forum, including the White House. ..... 6

CONCLUSION ..... 10

CERTIFICATE OF COMPLIANCE ..... 11

ADDENDUM: STATEMENTS OF INTEREST OF AMICI CURIAE ..... 12

**TABLE OF AUTHORITIES**

**Page(s):**

**Cases**

*Associated Press v. Budowich*,
780 F. Supp. 3d 32 (D.D.C. 2025) ........ 5

*Associated Press v. Budowich*,
No. 25-5109, 2025 WL 1649265 (D.C. Cir. June 6, 2025),
*reconsideration en banc denied*, 2025 WL 2047025 (D.C. Cir. July 22, 2025) ........ 5

*Ateba v. Leavitt*,
133 F.4th 114 (D.C. Cir. 2025),
*cert. denied*, 146 S. Ct. 822 (2025) ........ 4, 5, 7

*Cable News Network, Inc. v. Am. Broad. Cos., Inc.*,
518 F. Supp. 1238 (N.D. Ga. 1981) ........ 7

*Frank v. Herter*,
269 F.2d 245 (D.C. Cir. 1959) ........ 7

*Getty Images News Servs., Corp. v. Dep't of Defense*,
193 F. Supp. 2d 112 (D.D.C. 2002) ........ 7

*Hannegan v. Esquire, Inc.*,
327 U.S. 146 (1946) ........ 9

*Iancu v. Brunetti*,
588 U.S. 388 (2019) ........ 6

*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) ........ 2, 4

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974) ........ 1, 6

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........ 1, 6

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........ 7, 8

*Perry v. Sindermann*,
408 U.S. 593 (1972) ........ 7

*Police Dep't of Chi. v. Mosley*,
408 U.S. 92 (1972) .................... 1

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) .................... 3

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .................... 6

*Sherrill v. Knight*,
569 F.2d 124 (D.C. Cir. 1977) .................... 3, 4

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .................... 6

**Statutes**

1 Stat. 596 (1798) .................... 7

**Other Authorities**

1 Annals of Cong. 952 (1789),
*available at* https://bit.ly/4j1E72H .................... 9

29 Cong. Globe 411 (1847),
*available at* https://bit.ly/4jccLGY .................... 9

Anuj C. Desai, *The Transformation of Statutes into Constitutional Law: How Early Post Office Policy Shaped Modern First Amendment Doctrine*,
58 Hastings L.J. 671 (2007) .................... 8

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 23 Media Orgs.,
*N.Y. Times Co. v. Dep't of Defense*,
No. 25-04218-PLF (D.D.C Jan. 15, 2026), ECF No. 17-1 .................... xiv

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Comm. to Protect Journalists,
*Radio Free Europe/Radio Liberty, Inc. v. Lake*,
No. 1:25-cv-00799-RCL (D.D.C. Mar. 28, 2025), ECF No. 17-1 .................... xiv

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Indep. NPR Member Stations,
*Nat'l Pub. Radio, Inc. v. Trump*,
No. 1:25-cv-01674-RDM (D.D.C. June 20, 2025), ECF No. 26-1 .................... xiv

Br. of Amici Curiae Reps. Comm. for Freedom of the Press, Comm. to Protect Journalists, PEN Am., Press Freedom Ctr. at the Nat'l Press Club, & Soc'y of Pro. Journalists,
*Widakuswara v. Lake*,
Nos. 25-5144, 25-5145, 25-5150, 25-5151 (D.C. Cir. July 28, 2025) .................... xiv

Br. of Amici Curiae Reps. Comm. for Freedom of the Press, White House Correspondents' Ass'n & 46 News & Media Orgs., *Associated Press v. Budowich*, No. 25-5109 (D.C. Cir. Oct. 6, 2025) ........ xiv

Br. of Reps. Comm. for Freedom of the Press as Amicus Curiae, *Associated Press v. Budowich*, No. 1:25-cv-00532-TNM (D.D.C. Feb. 24, 2025), ECF No. 17-1 ........ xiv

ClintonLibrary42, *Pres. Clinton and P.M. Blair Joint Press Conference (1998)*, YouTube (Dec. 12, 2012), https://bit.ly/4cWOlNO ........ 2

*Covering the White House*, White House Correspondents' Ass'n, https://perma.cc/9XTQ-XBGE (last visited Sept. 20, 2026) ........ 2, 5

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 18, 2026, 3:04 PM), https://bit.ly/3Vriv5O ........ 1

Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech*, 134 Harv. L. Rev. 2299 (2021) ........ 8

Gerald R. Ford Presidential Foundation, *Press Conference on Questions Related to Nixon September 16, 1974*, YouTube (Mar. 11, 2021), https://bit.ly/4y8kQkL ........ 2

James A. Jacobs, *The President, the Press, and Proximity*, White House Historical Ass'n (Mar. 1, 2015), https://perma.cc/4RTE-536E ........ 3

James Madison, *Report on the Virginia Resolutions*, *in* 4 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 546 (Jonathan Elliot ed., 1836), *available at* https://bit.ly/3VKW1Nd ........ 8

*Joint Network Statement on White House Press Ban*, Fox News (Sept. 21, 2026), https://perma.cc/WS7Z-7TH6 ........ 1

Leslie Kendrick, *Content Discrimination Revisited*, 98 Va. L. Rev. 231 (2012) ........ 9

*President Trump Announces Medicaid Drug Price Discounts*, C-SPAN (Sept. 18, 2026), https://bit.ly/4y6oGdV ........ 1

*Remarks by President Trump in Press Briefing on COVID-19*, The White House (July 27, 2020), https://perma.cc/E88H-7ERA ........ 3

Sarah J. Eckman, Cong. Rsch. Serv., R44816,
*Congressional News Media and the House and Senate Press Galleries* (2017),
https://perma.cc/9HPC-PMQW ........................................................................................ 9

The Obama White House, *The President Holds a Press Conference on the Nuclear Deal with Iran*, YouTube (July 15, 2015),
https://bit.ly/4cY9ffD ....................................................................................................... 3

*Thomas Jefferson to Abigail Adams, 22 July 1804*, Nat'l Archives,
https://perma.cc/84NJ-S8T4 (last visited Sept. 21, 2026) ........................................................ 8

## INTEREST OF AMICI CURIAE

Proposed amici curiae are the Reporters Committee for Freedom of the Press, the White House Correspondents' Association, Advance Local Media LLC, American Broadcasting Companies, Inc., The Associated Press, The Atlantic Monthly Group LLC, Axios, Bloomberg News, Boston Globe Media Partners, LLC, CBS Broadcasting Inc., The Center for Investigative Reporting, Chicago Public Media, Inc., Conde Nast, Courthouse News Service, The Daily Beast Company LLC, Dow Jones & Company, Inc., The E.W. Scripps Company, Financial Times, Forbes Media LLC, Fox News Network, LLC, The Guardian U.S., Hearst Corporation, HuffPost, The Intercept Media, Inc., Knight First Amendment Institute at Columbia University, KQED Inc., LAist, Los Angeles Times Communications LLC, McClatchy Media Company, LLC, MediaNews Group Inc., Minnesota Public Radio, The National Press Club, National Public Radio, Inc., NBCUniversal Media, LLC, The New Republic, New York Public Radio, The New York Times Company, News/Media Alliance, Newsday LLC, Open Vallejo, Penguin Random House LLC, Pro Publica, Inc., Reuters News & Media Inc., The Seattle Times Company, Slate, USA Today Co., Inc., Vox Media Group, LLC, WAMU, The Washington Post, WBUR, and WNET.

Lead amicus the Reporters Committee for Freedom of the Press (the "Reporters Committee") is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media. Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources, the Reporters Committee today provides pro bono legal representation, amicus curiae support, and other resources to protect the legal rights of journalists. The Reporters Committee regularly appears as amicus in

this and other federal and state courts on First Amendment issues of importance to journalists. *See* Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 23 Media Orgs., *N.Y. Times Co. v. Dep't of Defense*, No. 25-04218-PLF (D.D.C Jan. 15, 2026), ECF No. 17-1; Br. of Reps. Comm. for Freedom of the Press as Amicus Curiae, *Associated Press v. Budowich*, No. 1:25-cv-00532-TNM (D.D.C. Feb. 24, 2025), ECF No. 17-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press, White House Correspondents' Ass'n & 46 News & Media Orgs., *Associated Press v. Budowich*, No. 25-5109 (D.C. Cir. Oct. 6, 2025); Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Comm. to Protect Journalists, *Radio Free Europe/Radio Liberty, Inc. v. Lake*, No. 1:25-cv-00799-RCL (D.D.C. Mar. 28, 2025), ECF No. 17-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Indep. NPR Member Stations, *Nat'l Pub. Radio, Inc. v. Trump*, No. 1:25-cv-01674-RDM (D.D.C. June 20, 2025), ECF No. 26-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press, Comm. to Protect Journalists, PEN Am., Press Freedom Ctr. at the Nat'l Press Club, & Soc'y of Pro. Journalists, *Widakuswara v. Lake* (and related appeals), Nos. 25-5144, 25-5145, 25-5150, 25-5151 (D.C. Cir. July 28, 2025).

Lead amicus the White House Correspondents' Association ("WHCA") is a nonprofit association incorporated in the District of Columbia, whose primary mission is to advocate for the newsgathering rights of the press on behalf of journalists who cover the White House and on behalf of Americans who rely on the press to provide information about the activities of their elected officials. Founded more than 100 years ago, the WHCA has consistently and effectively worked to ensure that the individuals who gather and report the news from the White House can seek answers from powerful officials, including the President of the United States. The WHCA is an independent, self-organized association of journalists who cover the White House on a full- or part-time basis. The WHCA has nearly 800 members, who together represent nearly 300 news

organizations. Since the Eisenhower administration, the WHCA has coordinated logistics related to the White House press pool and briefing room. In so doing, the WHCA has, for more than a dozen presidential administrations, served as a bulwark against government influence over White House news coverage.

The addendum to this brief contains the statements of interest of other individual amici.

Amici are uniquely positioned to provide the Court with information and insight relevant to the Court's determination of Plaintiffs' Motion for a Temporary Restraining Order. They include news outlets with White House credentials as well as organizations whose members hold such credentials. Amici know firsthand the importance of physical access by the press to government places and personnel, as well as the need for independence from undue government influence so that journalists can keep the public informed and perform their watchdog role. The proposed brief highlights the history and importance of press access to the White House and details how the President's actions violate decades of Supreme Court jurisprudence invalidating viewpoint discrimination.

No party or party's counsel authored this brief in whole or in part, or made a monetary contribution intended to fund its preparation or submission. No person other than amici made a monetary contribution to the preparation or submission of this brief.

## INTRODUCTION

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). Within the last few days, the Trump administration has banned three news organizations – CNN, MS Now, and Politico – from White House grounds. The administration's reasons for doing so are transparently viewpoint discriminatory. In the President's words, he barred these outlets because he perceived them as "'reporting' FAKE NEWS" about the President and his administration, with "Other Fake News Media Outlets to follow." Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 18, 2026, 3:04 PM), https://bit.ly/3Vriv5O. The President further accused these outlets of "purposely writ[ing] negative news" to "diminish" the administration and said they are "dishonest" and "terrible." *President Trump Announces Medicaid Drug Price Discounts*, at 27:46–28:25, 35:46–36:00, C-SPAN (Sept. 18, 2026), https://bit.ly/4y6oGdV. The administration's actions are inconsistent with the First Amendment, and the eviction of these news outlets must be immediately reversed.

The Constitution leaves the choice of how to cover "public issues" – "whether fair or unfair" – to the free press, not to the whims of any administration. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 738 (2024) (quoting *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)). As the news networks said in a joint statement on Monday, the "public has a vital interest in receiving accurate, independent information about its government. No administration should restrict a news organization because it objects to its reporting." *See Joint Network Statement on White House Press Ban*, Fox News (Sept. 21, 2026), https://perma.cc/WS7Z-7TH6.

The President has indicated that evictions of other news organizations will follow. The current ban – and any future bans – are intended to impair the critical work of news organizations

covering the presidency if this Court does not immediately intervene. *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (holding that deprivation of White House hard pass constitutes irreparable harm). Amici, many of whom currently hold White House credentials and are in the pool rotation, write to emphasize that the impact of the administration's actions is felt by each of them, that the targeted expulsion of news media from White House grounds injures the public interest, and that unassailable First Amendment law makes any viewpoint-based decision to bar reporters from a nonpublic forum constitutionally repugnant.

## ARGUMENT

### I. White House correspondents work in spaces protected by the nonpublic forum doctrine and they have historically played an essential role in informing the public about the office of the presidency.

The core function of a White House correspondent is to "report on the president of the United States, to shine a light and hold the administration accountable." *Covering the White House*, White House Correspondents' Ass'n, https://perma.cc/9XTQ-XBGE (last visited Sept. 20, 2026). For decades, this kind of reporting has depended in part on physical access to White House grounds to ask questions of public officials "on behalf of the American People." *Id.* For example, reporters posed questions to President Gerald Ford during a 1974 press conference in the East Room about his pardon of President Richard Nixon, *see* Gerald R. Ford Presidential Foundation, *Press Conference on Questions Related to Nixon September 16, 1974*, YouTube (Mar. 11, 2021), https://bit.ly/4y8kQkL; to President Bill Clinton about the Monica Lewinsky affair during a 1998 joint press conference with British Prime Minister Tony Blair in the East Room, *see* ClintonLibrary42, *Pres. Clinton and P.M. Blair Joint Press Conference (1998)*, YouTube (Dec. 12, 2012), https://bit.ly/4cWOlNO; to President Barack Obama during a 2015 press conference held in the East Room about the nuclear deal with Iran, *see* The Obama White

House, *The President Holds a Press Conference on the Nuclear Deal with Iran*, YouTube (July 15, 2015), https://bit.ly/4cY9ffD; and to President Trump, during his first term, where he held daily briefings during the early days of the COVID-19 pandemic, *see Remarks by President Trump in Press Briefing on COVID-19*, The White House (July 27, 2020), https://perma.cc/E88H-7ERA. And that is to say nothing of the informal interactions a White House reporter has with administration officials or White House staff on any given day to gather information of substantial public interest. Whether covering formal press conferences or the daily work of the presidency, White House correspondents have long served as "surrogates for the public," *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion), by providing a firsthand, independent account of the activities of the executive branch.

The White House has included dedicated workspace in one form or another for members of the press "since completion of the West Wing's first iteration in 1902." James A. Jacobs, *The President, the Press, and Proximity*, White House Historical Ass'n (Mar. 1, 2015), https://perma.cc/4RTE-536E. Since 1970, the space has included a Press Briefing Room and designated workspace "in one of the oldest parts of the White House, nestled between the fabled residence and the West Wing, [which] is evidence alone of the key role the news media has come to play as an intermediary between the public and the executive branch of the United States government." *Id*. These White House press facilities have historically been "perceived as being open to *all* bona fide Washington-based journalists." *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977) (emphasis added). To gain access to these facilities – and thereby White House press briefings held in the briefing room and in many other portions of the White House complex –

reporters apply for a "hard pass" or a temporary "day pass" from the White House Press Office, subject to a security screening process. *See Ateba v. Leavitt*, 133 F.4th 114, 117 (D.C. Cir. 2025), *cert. denied*, 146 S. Ct. 822 (2025) (summarizing differences in access with different passes).

Recognizing that the purpose of the White House's press facilities is "to provide 'press facilities for correspondents who need to report therefrom,' thereby enabling select journalists to attend briefings by the Press Secretary and to gather information about the administration," *Ateba*, 133 F.4th at 122 (quoting *Sherrill*, 569 F.2d at 129), the D.C. Circuit confirmed just last year that "the White House Press Area is a nonpublic forum," *id.*, to which certain procedural and substantive protections attach. Indeed, going back almost fifty years, the D.C. Circuit held that "access may not be denied arbitrarily or for less than compelling reasons." *Sherrill*, 569 F.2d at 129. And because journalists enjoy a protected First Amendment interest in obtaining press passes, this right "qualifies as liberty which may not be denied without due process of law under the [F]ifth [A]mendment." *Id.* at 130–31. Thus, the government must provide "notice of the factual bases for denial, an opportunity for the applicant to respond to these, and a final written statement of the reasons for denial" of a press pass. *Id.* at 130. Similarly, "a duly issued hard pass may not be suspended without due process." *Karem*, 960 F.3d at 665. Accordingly, before revoking or suspending access to the White House for a member of the press, the government must at a minimum provide "some notice of behavioral expectations" that might result in a sanction, along with notice of "the magnitude of the sanction that the White House might impose for [the member's] purported failure to heed any such expectations." *Id.* (citation omitted) (cleaned up). Finally, and of particular relevance in light of the President's public comments pointing to the affected news organizations' editorial choices as the basis for the ban,

in no instance may access to nonpublic fora be constrained in an unreasonable or viewpoint discriminatory manner. *Ateba*, 133 F.4th at 123.

Additionally, some presidential events take place where not all White House correspondents can fit, such as press conferences in the Oval Office and during travel on Air Force One. *Covering the White House*, *supra*. In such situations, a "press pool" consisting of a smaller group of writers, photographers, and technicians typically covers presidential activities "on behalf of the broader corps of correspondents." *Id.* Last year, the administration expelled another media organization – the Associated Press – from the pool, the Oval Office, and events in the East Room "unless it revised its Stylebook to refer to the Gulf of America, which President Trump had recently renamed from the Gulf of Mexico." *Associated Press v. Budowich*, No. 25-5109, 2025 WL 1649265, at *2 (D.C. Cir. June 6, 2025), *reconsideration en banc denied*, 2025 WL 2047025 (D.C. Cir. July 22, 2025). The AP sued, and the district court, finding that the pool and the affected spaces qualified as nonpublic fora, enjoined the administration from denying the AP access to the pool and to limited-access events which journalists with a hard pass may attend with permission, such as press briefings held in the East Room, based on viewpoint. *Associated Press v. Budowich*, 780 F. Supp. 3d 32, 49–55 (D.D.C. 2025). While a panel of the D.C. Circuit later stayed the district court's preliminary injunction solely as to limited-access events in the Oval Office and "other similar spaces," it left the injunction in place insofar as it precluded the administration from excluding the AP from events in the East Room, which indisputably receives First Amendment protection as a nonpublic forum. *Budowich*, 2025 WL 1649265, at *1, *13, *26. A merits appeal is currently pending before the D.C. Circuit.

The ban at issue in this case does exactly what longstanding D.C. Circuit precedent and most recently the stay panel in *Budowich* said the government cannot do: The administration

prohibited three news organizations from access to *the entirety* of the White House and its grounds due to the content of their reporting. And, as discussed below, the protections the First Amendment affords to nonpublic fora mean that curtailing access to the White House based on viewpoint is unconstitutional.

## II. Stripping journalists and news outlets of their rights because of perceived editorial viewpoint violates decades of Supreme Court jurisprudence and is impermissible in any type of forum, including the White House.

"Viewpoint discrimination is poison to a free society," *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring), and is presumptively unconstitutional in any forum. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (noting viewpoint discrimination impermissible even in a "limited public forum"). The government has no legitimate interest in "tilt[ing] public debate in a preferred direction," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578–79 (2011), even one it believes to be more noble or in line with its conception of what is "better balance[d]," *Moody*, 603 U.S. at 741. The Constitution "leave[s] such judgments to speakers and their audiences." *Id.* at 719.

Barring these three news organizations from access to the White House because they exercised their "editorial control and judgment" to cover issues in a way that the President views as negative "exacts a penalty on the basis of the content of a newspaper" much like any law that forbids publication or imposes a monetary sanction on its use. *See Tornillo*, 418 U.S. at 256–58 ("Governmental restraint on publishing need not fall into familiar or traditional patterns to be subject to constitutional limitations on governmental powers."). Here, the penalty is a particularly steep one: It deprives reporters and their audiences of timely, newsworthy information about the daily affairs of the presidency. It is designed to have a chilling effect, with the hope that it discourages other outlets from publishing stories that they fear might provoke

similar sanctions. That chilling effect runs headlong into the First Amendment's basic promise that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

As the D.C. Circuit has recognized, when the government elects to "enabl[e] select journalists to attend briefings by the Press Secretary and to gather information about the administration," it must comply with the First Amendment and principles of due process when determining who can do so. *Ateba*, 133 F.4th at 122. That rule accords with bedrock Supreme Court precedent, which recognizes that "even though a person has no 'right' to a valuable governmental benefit," the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). In keeping with that principle, courts have long held that nondiscriminatory principles must guide the selection of media representatives at Guantanamo Bay, *see Getty Images News Servs., Corp. v. Dep't of Defense*, 193 F. Supp. 2d 112, 120 (D.D.C. 2002); the selection of correspondents to travel to foreign soil otherwise off-limits to the public, *see Frank v. Herter*, 269 F.2d 245, 247–48 (D.C. Cir. 1959) (Burger, J., concurring); and the selection of the journalists who make up the White House press pool, *see Cable News Network, Inc. v. Am. Broad. Cos., Inc.*, 518 F. Supp. 1238, 1245 (N.D. Ga. 1981).

That the constitutional proscription against viewpoint discrimination is as crystal clear as it is today reflects centuries of experience, public policy, and jurisprudence. For example, the Sedition Act of 1798, which made it a crime to "publish[] any false, scandalous and malicious writing or writings against the government of the United States," 1 Stat. 596 (1798), was described by the Virginia legislature as violating "the right of freely examining public characters

and measures, and of free communication among the people thereon, which has ever been justly deemed the only effectual guardian of every other right." James Madison, *Report on the Virginia Resolutions*, *in* 4 The Debates in the Several State Conventions on the Adoption of the Federal Constitution, 546, 553–54 (Jonathan Elliot ed., 1836), *available at* https://bit.ly/3VKW1Nd. While that law was "never tested in this Court, the attack upon its validity has carried the day in the court of history." *Sullivan*, 376 U.S. at 276. President Jefferson pardoned those who had been convicted and sentenced under the Act because he believed it to be a constitutional "nullity as absolute and as palpable as if Congress had ordered us to fall down and worship a golden image." *Thomas Jefferson to Abigail Adams, 22 July 1804*, Nat'l Archives, https://perma.cc/84NJ-S8T4 (last visited Sept. 21, 2026).

The enduring hostility to viewpoint discrimination is also evidenced by debates over the Post Office Act of 1792, during which "members of Congress clearly worried about the possibility that postal agents might make viewpoint-based distinctions when determining access to the mail," Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech*, 134 Harv. L. Rev. 2299, 2315 (2021), including fears that allowing the Postmaster General to select newspapers for preferential access "would provide the government with a tool for propaganda," Anuj C. Desai, *The Transformation of Statutes into Constitutional Law: How Early Post Office Policy Shaped Modern First Amendment Doctrine*, 58 Hastings L.J. 671, 691 (2007). Rather than invite that possibility, Congress "settled on a policy that would permit all newspaper publishers to use the mail." *Id.* at 692. In addressing a later challenge to the revocation of Esquire Magazine's second-class mailing permit under a later iteration of the law, the Supreme Court reiterated the view that "grave constitutional questions are immediately raised once it is said that the use of the mails is a privilege which may be extended or withheld on any

grounds whatsoever," including imposing the "condition that certain economic or political ideas not be disseminated." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 156 (1946).

Similar traditions of access free from viewpoint discrimination emerged in the House and Senate chambers. For example, shortly after the House began permitting members of the public and the press access to its chamber in 1789, a congressman introduced a resolution seeking to censure the newspapers that had reported on House debates under the guise that those newspapers "misrepresented these debates in the most glaring deviations from truth; often distorting the arguments of the members from the true meaning." 1 Annals of Cong. 952 (1789), *available at* https://bit.ly/4j1E72H. The resolution was withdrawn after a short debate, with another representative condemning it as "an attack upon the liberty of the press." *Id.* at 954. Later efforts to exclude members of the press from the Senate floor were similarly rejected. *See, e.g.*, 29 Cong. Globe 411 (1847), *available at* https://bit.ly/4jccLGY (arguing proposal's "inevitable consequence is[] to hold a rod over the editor" in restricting "[t]he freedom of the press"). By 1877, both "the House and Senate decided to create a committee of correspondents to oversee press gallery membership and administration." Sarah J. Eckman, Cong. Rsch. Serv., R44816, *Congressional News Media and the House and Senate Press Galleries* 1 (2017), https://perma.cc/9HPC-PMQW.

The law is so firmly settled that protection from viewpoint discrimination enjoys the same doctrinal position as other central principles of the First Amendment, such as the presumption against prior restraint. *See* Leslie Kendrick, *Content Discrimination Revisited*, 98 Va. L. Rev. 231, 242–43 & n.35 (2012) (collecting sources) ("There is a great deal of agreement that viewpoint discrimination is at the core of what the First Amendment forbids."). The administration's rationalization for its conduct provides all the evidence needed to demonstrate

that its expulsion of journalists is illegal and unconstitutional under controlling precedent. Given the irremediable harm of having this ban in place for even one day, amici respectfully urge that relief be granted quickly and in a manner that will foreclose future constitutional violations.

**CONCLUSION**

For the foregoing reasons, amici urge the Court to grant Plaintiffs' motion for a temporary restraining order.

Dated: September 23, 2026

Respectfully submitted,

*/s/ Bruce D. Brown*

Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record*
Lisa Zycherman (DC Bar No. 495277)
Gabriel Rottman (DC Bar No. 992728)
Marietta Catsambas (DC Bar No. 1617526)
Allyson Veile (DC Bar No. 1766038)
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Email: bruce.brown@rcfp.org

Simon Latcovich (DC Bar No. 980319)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Phone: 202.434.5967
Email: slatcovich@wc.com

*Counsel for Proposed Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

This amici curiae brief complies with the type-volume limit of LCvR 7(o)(4) because it is 25 or fewer pages.

This amici curiae brief complies with the typeface and type-style requirements of LCvR 5.1(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in size 12 font.

Dated: September 23, 2026

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record for Proposed Amici Curiae*

**ADDENDUM: STATEMENTS OF INTEREST OF AMICI CURIAE**

Advance Local Media LLC is named after the *Staten Island Advance*; it dates to 1922 and is known for its high-quality local journalism and has won four Pulitzer Prizes in the past five years.

American Broadcasting Companies, Inc. is a broad-based communications company. Alone or through its subsidiaries, it owns ABC News, abcnews.com, and local broadcast television stations that regularly gather and report news to the public. ABC News produces the television programs *World News with David Muir*, *Good Morning America*, *Nightline*, *20/20*, and *This Week*, among others.

The Associated Press ("AP") is a news cooperative organized under the Not-for-Profit Corporation Law of New York. The AP's members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers. The AP operates from 280 locations in more than 100 countries. On any given day, AP's content can reach more than half of the world's population.

The Atlantic Monthly Group LLC is the publisher of The Atlantic and TheAtlantic.com. Founded in 1857 by Oliver Wendell Holmes, Ralph Waldo Emerson, Henry Wadsworth Longfellow and others, The Atlantic continues its 160-year tradition of publishing award-winning journalism that challenges assumptions and pursues truth, covering national and international affairs, politics and public policy, business, culture, technology and related areas.

Axios Media Inc. is a digital media company with a mission to deliver news in an efficient format that helps professionals get smarter faster across an array of topics, including politics, science, business, health, tech, media, and local news.

Bloomberg News' newsroom of more than 3,000 journalists and analysts delivers thousands of stories a day, producing content that is featured across multiple platforms, including digital, TV, video, audio, print and live events.

Boston Globe Media Partners, LLC publishes The Boston Globe, the largest daily newspaper in New England.

CBS Broadcasting Inc. produces and broadcasts news, public affairs and entertainment programming. Its CBS News Division produces morning, evening and weekend news programming, as well as news and public affairs newsmagazine programs, such as "60 Minutes" and "48 Hours." CBS Broadcasting Inc. also directly owns and operates television stations across the country, including WCBS-TV in New York City, which produces daily news programming.

The Center for Investigative Reporting, Inc. is the nation's oldest nonprofit investigative newsroom in the country that runs the brands Mother Jones, Reveal, and CIR Studios. Mother Jones is a reader-supported news magazine and website known for ground-breaking investigative and in-depth journalism on issues of national and global significance. Reveal produces investigative journalism for the Reveal national public radio show and podcast, and CIR Studios produces feature length documentaries distributed on Netflix, Hulu, and other streaming channels. Reveal often works in collaboration with other newsrooms across the country.

Chicago Public Media, Inc. is the owner and operator of WBEZ 91.5 and publisher of the *Chicago Sun-Times.* The *Chicago Sun-Times* has been a stalwart of Chicago media for several decades. It operates in print and on the internet at chicago.suntimes.com. In 2022, the *Sun-Times* joined Chicago Public Media, a 501(c)(3) nonprofit organization. Chicago Public Media

also operates radio station WBEZ that broadcasts local and national news and iconic programming on 91.5 FM radio and streaming on the internet at wbez.org.

Condé Nast's global magazine and digital brand portfolio includes titles such as The New Yorker, Vanity Fair, Wired, Vogue, and GQ.

Courthouse News Service is a California-based legal news service that publishes a daily news website with a focus on politics and law. The news service also publishes daily reports on new civil actions and appellate rulings in both state and federal courts throughout the nation. Subscribers to the daily reports include law firms, universities, corporations, governmental institutions, and a wide range of media including newspapers, television stations and cable news services.

The Daily Beast delivers award-winning original reporting and sharp opinion from big personalities in the arenas of politics, pop-culture, world news and more.

Dow Jones & Company is the world's leading provider of news and business information. Through *The Wall Street Journal*, *Barron's*, MarketWatch, Dow Jones Newswires, and its other publications, Dow Jones has produced journalism of unrivaled quality for more than 130 years and today has one of the world's largest newsgathering operations. Dow Jones's professional information services, including the Factiva news database and Dow Jones Risk & Compliance, ensure that businesses worldwide have the data and facts they need to make intelligent decisions. Dow Jones is a News Corp company.

The E.W. Scripps Company is the nation's fourth-largest local TV broadcaster, operating a portfolio of 61 stations in 41 markets. Scripps also owns Scripps Networks, which reaches nearly every American through the national news outlets Court TV and Newsy and popular entertainment brands ION, Bounce, Grit, Laff and Court TV Mystery. The company also runs an

award-winning investigative reporting newsroom in Washington, D.C., and is the longtime steward of the Scripps National Spelling Bee.

The Financial Times is one of the world's leading news organisations, recognised internationally for its authority, integrity and accuracy. Its titles include the Financial Times newspaper and www.ft.com website, with an emphasis on financial journalism and political, economic and social analysis.

Forbes Media LLC is the publisher of Forbes Magazine as well as an array of investment newsletters and the leading business news website, Forbes.com. Forbes has been covering American and global business since 1917.

Fox News Network LLC ("Fox News") owns and operates the Fox News Channel, the top rated 24/7 all news national cable channel, and the Fox Business Network, as well as Foxnews.com, Foxbusiness.com, and the Fox News Radio Network.

Guardian US is the New York City-based American online presence, through the website https://www.theguardian.com/us, of the British print newspaper The Guardian and its website theguardian.com. Launched in September 2011, Guardian US covers American and international news for an online, global audience. Guardian US is renowned for the Paradise Papers investigation and other award-winning work including the NSA revelations, Panama Papers and The Counted investigations. The website theguardian.com is one of the world's leading English-language newspaper websites and operates two international online editions of the Guardian - Guardian US (Guardian News & Media LLC) and Guardian Australia (GNM Australia PTY Ltd). Traffic from outside the UK now represents around two-thirds of the Guardian's total digital audience.

Hearst is one of the nation's largest diversified media, information and services companies with more than 360 businesses. Its major interests include ownership of 15 daily and more than 30 weekly newspapers, including the San Francisco Chronicle, Houston Chronicle, and Albany Times Union; hundreds of magazines around the world, including Cosmopolitan, Good Housekeeping, ELLE, Harper's BAZAAR and O, The Oprah Magazine; 31 television stations such as KCRA-TV in Sacramento, Calif. and KSBW-TV in Monterey/Salinas, CA, which reach a combined 19 percent of U.S. viewers; ownership in leading cable television networks such as A&E, HISTORY, Lifetime and ESPN; global ratings agency Fitch Group; Hearst Health; significant holdings in automotive, electronic and medical/pharmaceutical business information companies; Internet and marketing services businesses; television production; newspaper features distribution; and real estate.

HuffPost is a news and information website owned by BuzzFeed, Inc., a social news and entertainment company that provides shareable breaking news, original reporting, entertainment, and video across the social web to its global audience of more than 200 million.

The Intercept Media, Inc. is a non-profit digital media venture committed to rigorous, adversarial journalism in the public interest.

The Knight First Amendment Institute at Columbia University ("Knight Institute") is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press through strategic litigation, research, and public education. The Institute's aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government. The Institute is committed to protecting the integrity and vitality of expressive spaces in which citizens and

their proxies in the press can communicate with each other and government representatives about matters of public concern.

KQED Inc. is a nonprofit public benefit corporation organized under the laws of California and engaged in dissemination of news and information since its founding as a public broadcasting station in 1953. At all times relevant to this proceeding, KQED's core mission has been the pursuit and publication/broadcast of information in the public's interest. KQED has advanced this purpose not only through its consistent San Francisco Bay Area and statewide news reporting, which relies heavily on the use of the California Public Records Act, but also as a champion of public access to some of the most serious information maintained by government: law enforcement use of deadly force, police misconduct and the broader operations of our state's criminal justice system.

LAist is L.A.'s largest NPR station, operated by Southern California Public Radio. Its signal stretches north to Santa Barbara County, south to Orange County and east to the Inland Empire. It operates LAist.com, a local news site. Its mission is to strengthen the civic and cultural bonds that unite Southern California's diverse communities by providing the highest quality news and information service.

Los Angeles Times Communications LLC is one of the largest daily newspapers in the United States. Its popular news and information website, www.latimes.com, attracts audiences throughout California and across the nation.

The McClatchy Company, LLC is a publisher of iconic brands such as the *Miami Herald*, *The Kansas City Star*, *The Sacramento Bee*, *The Charlotte Observer*, *The* (Raleigh) *News & Observer*, and the *Fort Worth Star-Telegram*. McClatchy operates media companies in 30 U.S. markets in 16 states, providing each of its communities with high-quality

news and advertising services in a wide array of digital and print formats. McClatchy is headquartered in Sacramento, California.

MediaNews Group is a leader in local, multi-platform news and information, distinguished by its award-winning original content and high quality local media. It is one of the largest news organizations in the United States, with print and online publications across the country.

Minnesota Public Radio (MPR) is one of the nation's premier public radio organizations, producing programming for radio, digital and live audiences. Operating a 45-station terrestrial radio network, MPR serves nearly all of Minnesota and parts of surrounding states. MPR's three regional services—MPR News, YourClassical MPR and The Current—reach 1 million listeners each week. MPR's mission is to create the future of public media by amplifying voices to inform, include, and inspire.

The National Press Club is the world's leading professional organization for journalists. Founded in 1908, the Club has 3,100 members representing most major news organizations. The Club defends a free press worldwide. Each year, the Club holds over 2,000 events, including news conferences, luncheons and panels, and more than 250,000 guests come through its doors.

National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public. NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term. NPR reaches approximately 60 million people each week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube video content. NPR distributes its radio broadcasts through

more than 1,000 non-commercial, independently operated radio stations, licensed to more than 260 NPR members and numerous other NPR-affiliated entities.

NBCUniversal Media, LLC is one of the world's leading media and entertainment companies in the development, production and marketing of news, entertainment and information to a global audience. Among other businesses, NBCUniversal Media, LLC owns and operates the NBC television network, the Spanish-language television network Telemundo, NBC News, several news and entertainment networks, including MSNBC and CNBC, and a television-stations group consisting of owned-and-operated television stations that produce substantial amounts of local news, sports and public affairs programming. NBC News produces the "Today" show, "NBC Nightly News with Lester Holt," "Dateline NBC" and "Meet the Press."

The New Republic is a daily publisher of stories advocating for liberal reforms in a modern age. For over 110 years the New Republic has published stories seeking to reclaim democratic faith in the common world.

With an urban vibrancy and a global perspective, New York Public Radio produces innovative public radio programs, podcasts, and live events that touch a passionate community of 23.4 million people monthly on air, online and in person. From its state-of-the-art studios in New York City, NYPR is reshaping radio for a new generation of listeners with groundbreaking, award-winning programs including Radiolab, On the Media, The Takeaway, and Carnegie Hall Live, among many others. New York Public Radio includes WNYC, WQXR, WNYC Studios, Gothamist, The Jerome L. Greene Performance Space, and New Jersey Public Radio. Further information about programs, podcasts, and stations may be found at www.nypublicradio.org.

The New York Times Company is the publisher of *The New York Times* and operates the news website nytimes.com.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including over 2000 news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Newsday LLC ("Newsday") is the publisher of the daily newspaper, Newsday, and related news websites. Newsday is one of the nation's largest daily newspapers, serving Long Island through its portfolio of print and digital products. Newsday has received 19 Pulitzer Prizes and other esteemed awards for outstanding journalism.

Open Vallejo is an award-winning, independent, non-partisan, nonprofit newsroom serving the public interest. Open Vallejo seeks to illuminate a small city long burdened by police violence, corruption, and neglect. As the first project of the Informed California Foundation, Open Vallejo is also a permanent design laboratory for open source, high-impact, broadly-accessible frameworks for ensuring local transparency, accountability, and information justice.

Penguin Random House LLC publishes adult and children's fiction and nonfiction in print and digital trade book form in the U.S. The Penguin Random House global family of companies employ more than 10,000 people across almost 250 editorially and creatively independent imprints and publishing houses that collectively publish more than 15,000 new titles annually. Its publishing lists include more than 60 Nobel Prize laureates and hundreds of the world's most widely read authors, among whom are many investigative journalists covering domestic politics, the justice system, business and international affairs.

Pro Publica, Inc. ("ProPublica") is an independent, nonprofit newsroom that produces investigative journalism in the public interest. It has won six Pulitzer Prizes, most recently a 2020 prize for national reporting, the 2019 prize for feature writing, and the 2017 gold medal for public service. ProPublica is supported almost entirely by philanthropy and offers its articles for republication, both through its website, propublica.org, and directly to leading news organizations selected for maximum impact. ProPublica has extensive regional and local operations, including ProPublica Illinois, which began publishing in late 2017 and was honored (along with the Chicago Tribune) as a finalist for the 2018 Pulitzer Prize for Local Reporting, an initiative with the Texas Tribune, which launched in March 2020, and a series of Local Reporting Network partnerships.

Reuters, the news and media division of Thomson Reuters, is the world's largest multimedia news provider. Founded in 1851, it is committed to the Trust Principles of independence, integrity and freedom from bias. With unmatched coverage in over 16 languages, and reaching billions of people worldwide every day, Reuters provides trusted intelligence that powers humans and machines to make smart decisions. It supplies business, financial, national and international news to professionals via desktop terminals, the world's media organizations, industry events and directly to consumers.

The Seattle Times Company, locally owned since 1896, publishes the daily newspaper *The Seattle Times*, together with the *Yakima Herald-Republic* and *Walla Walla Union-Bulletin*, all in Washington state.

The Slate Group publishes Slate, a daily online magazine. Slate features articles and podcasts analyzing news, politics and contemporary culture.

USA Today Co., Inc., formerly known as Gannett, is the largest local newspaper company in the United States. Its more than 200 local daily brands in 43 states — together with the iconic USA TODAY — reach an estimated digital audience of 180 million each month.

Vox Media Group, LLC owns *New York* Magazine, Vox, and the Vox Media Podcast Network.

WAMU 88.5, one of the founding NPR stations, is the leading public radio station for NPR news and information in the greater Washington D.C. area. Since 1961, it has provided programming to an audience of listeners that now totals almost 1 million listeners on-air, online, and on demand. WAMU is member-supported, professionally-staffed, and licensed to American University, a private, student-centered research institution located in Washington, DC that is committed to advancing knowledge and preparing the next generation of leaders to effect positive change in our community and throughout the world. To ensure that WAMU remains independent and can fulfill its mission, WAMU maintains independence from American University on all editorial matters and over how WAMU's editorial work is published, broadcast or conveyed.

The Washington Post (formally, WP Company LLC d/b/a The Washington Post) is a news organization based in Washington, D.C. It publishes The Washington Post newspaper and the website www.washingtonpost.com, and produces a variety of digital and mobile news applications. The Post has won Pulitzer Prizes for its journalism, including the award in 2020 for explanatory reporting.

WBUR is Boston's NPR. It is a public media leader committed to producing high-quality journalism and enriching experiences that foster understanding, connection and

community for an expanding circle of people. WBUR is owned and operated by The Trustees of Boston University, which holds the station's broadcast license.

WNET is the parent company of New York's THIRTEEN – America's flagship PBS station – WLIW21, THIRTEEN PBSKids, WLIW World and Create; Long Island's only NPR station WLIW-FM; and ALL ARTS, the arts and culture media provider. WNET also operates NJ PBS, New Jersey's statewide public television network, and newsroom NJ Spotlight News. Through these channels and streaming platforms, WNET brings arts, culture, education, news, documentary, entertainment, and DIY programming to more than five million viewers each month. WNET's award-winning productions include signature PBS series *Nature*, *Great Performances*, *American Masters*, *PBS NewsHour Weekend*, and *Amanpour and Company* and trusted local news programs *MetroFocus* and *NJ Spotlight News with Briana Vannozzi*.