# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,
et al.,

Plaintiff(s),

v.

DONALD J. TRUMP, et al,

Defendant(s).

Civil Case
No. 26-03287 TJK

Washington, D.C.

September 23, 2026

---

MOTION HEARING HELD VIA ZOOM
BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): Theodore Boutrous, Jr., Esquire
Connor S. Sullivan, Esquire
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California 90071

KatieLynn Boyd Townsend, Esquire
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, New York 10166

FOR THE DEFENDANT(S): Michael K. Velchik, Esquire
United States Department of Justice
950 Pennsylvania Avenue Northwest
Washington, D.C. 20530

REPORTED BY: Tammy Nestor, RMR, CRR
Official Court Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001
tammy_nestor@dcd.uscourts.gov

presumably, if they found that someone was a national security threat, a spy, a foreign agent, or had done something that made it, the reporter, not the reporter's reporting, but the reporter him or herself, there would, of course, be authority by the White House to deal with that.

THE COURT: So, again, we shouldn't spend too much time on here because it is not this case for sure, but you don't think -- I shouldn't say it's not this case for sure. But you think you would place the reporter's reporting outside the possibility that that could warrant reporting about not spying, but reporting, right, that still, nonetheless, an administration came forward and said we think that reporting reported classified information and endangered national security, that scenario you don't think could ever justify pulling the hard pass?

MR. BOUTROUS: I do not think that would justify pulling a hard pass. I think it would be viewpoint discrimination. And for all these years, for, you know, a hundred years, presidents have been objecting, and reporters have been reporting on sensitive national security issues.

Look at the Pentagon Paper case. You look at these cases, that's really baked into the system. So once you start going down that road, it is blatant viewpoint discrimination, content discrimination. And in that sense, that is this case. That's what they are saying now in their

briefs. That's what President Trump is saying. He didn't invoke national security.

THE COURT: You're right. That's why I caught myself. That is a piece of the argument. I am, like you said, I am skeptical they have connected it all the way through, but yes, you're right, that is, at least on some level of generality, the argument being made, correct.

All right. Anything further affirmative that you want to say?

MR. BOUTROUS: If I could just, you know, quickly on retaliation, this is just a clear retaliation case. So when we look at the fact that we have First Amendment activity, no dispute, the President himself said that these bans on these organizations and reporters was in his Truth Social post as a result of their bad reporting that he thinks is, you know, negative and false.

Clearly, it's the kind of adverse action that would deter and have a chilling effect on a reasonable person, reasonable reporter, and so I think it's First Amendment retaliation.

I do think, Your Honor, since I'm very concerned that even if the Court grants a TRO on due process grounds, the shenanigans will continue. And I think of the Trump versus Cook decision from the Supreme Court about how courts don't have to have naivete that ordinary citizens wouldn't. We

can kind of see where we are headed here. There's going to be a series of faux due process efforts. And so that's why I think the First Amendment issues are so clear. And I know this Court is going to be deferential to the executive branch and to the prerogatives, but here it's just so over the top, I think it's clear retaliation.

And then on the nonpublic forum, on the First Amendment issues, I think it's really important, first, we have Mahoney, which talks about standardless discretion, which this is President Trump and their exercising standardless discretion. The Court in the D.C. Circuit there and in Ateba and in Sherrill, Sherrill was sort of a precursor to the nonpublic forum doctrine, every D.C. Circuit opinion agrees that the White House press facilities, the press briefing room, the work spaces, other areas where the press has always been able to do reporting and gather news is a nonpublic forum that triggers First Amendment protection, and restrictions and actions by the government cannot be viewpoint driven and can't be unreasonable.

And I'll just, on this point, you know, focus on the fact that they rely heavily on the D.C. Circuit's stay decision in the AP case, which has no binding effect, but I will take it for these purposes. They cite Sherrill, and they say Sherrill says there's a First Amendment right. The