**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., MS NOW Cable, LLC, POLITICO LLC, et al.,<br>Plaintiffs,<br>v.<br>DONALD J. TRUMP, et al.,<br>Defendants. | Case No. 1:26-cv-03287-TJK |

# BRIEF OF PROPOSED AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 77 MEDIA ORGANIZATIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record*
Lisa Zycherman (DC Bar No. 495277)
Gabriel Rottman (DC Bar No. 992728)
Marietta Catsambas (DC Bar No. 1617526)
Allyson Veile (DC Bar No. 1766038)
Annie Seminara (*of counsel*)
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Email: bruce.brown@rcfp.org

*Counsel for Proposed Amici Curiae*

## CORPORATE DISCLOSURE STATEMENTS

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

Advance Local Media LLC is an indirect wholly owned subsidiary of Advance Publications, Inc. There is no publicly traded company that directly or indirectly owns 10% or more of the stock or voting interests of Advance Publications, Inc.

Agence France-Presse is an autonomous entity endowed with civil personality and operating in accordance with commercial rules, registered in the Paris Trade and Companies Register under number 775 658 354.

American Broadcasting Companies, Inc. is an indirect, wholly-owned subsidiary of The Walt Disney Company, a publicly traded corporation.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law. It is not publicly traded.

Association of Alternative Newsmedia has no parent corporation and does not issue any stock.

The Association of Minnesota Public Educational Radio Stations (“AMPERS”) is a 501(c)(3) non-profit organization with no parent company.

The Atlantic Monthly Group LLC is a privately-held media company, owned by Emerson Collective and Atlantic Media, Inc. No publicly held corporation owns 10% or more of its stock.

Axios Media Inc. is a privately owned company, and no publicly held company owns 10% or more of its stock.

The Baltimore Banner is published by the Venetoulis Institute for Local Journalism, which is a Delaware charitable nonstock corporation with no parent corporation.

Bloomberg News is published by Bloomberg L.P., which is a limited partnership. Its general partner is Bloomberg Inc., which is privately held. No publicly held corporation owns 10 percent or more of Bloomberg L.P.'s limited partnership interests.

Boston Globe Media Partners, LLC, is a privately held company. No publicly held corporation owns 10% or more of its stock.

National Cable Satellite Corporation, d/b/a C-SPAN is a non-profit District of Columbia corporation and is exempt from federal income tax pursuant to section 501(c)(3) of the Internal Revenue Code. It has no parent company and issues no stock.

The Center for Investigative Reporting, Inc. is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Chicago Public Media is a not for profit corporation. It has no parent entity and issues no stock. It owns and operates WBEZ in Chicago, one of the founding NPR member stations, as well as simulcast stations throughout Illinois and Indiana and is the publisher of the Chicago Sun-Times.

The Committee to Protect Journalists is a nonprofit organization with no parent corporation and no stock.

Condé Nast is a direct, wholly owned subsidiary of Advance Magazine Publishers Inc. Advance Magazine Publishers Inc. is an indirect, wholly owned subsidiary of Advance Publications, Inc. There is no publicly traded company that directly or indirectly owns 10% or more of the stock or voting interests of Advance Publications, Inc.

Courthouse News Service is a privately held corporation with no parent corporation and no publicly held corporation holds more than 10 percent of its stock.

The Daily Beast Company LLC is a wholly-owned indirect subsidiary of IAC/InterActiveCorp, a publicly traded company.

Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News Corporation, a publicly held company. Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones. News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC. No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

The Financial Times Limited is a private company and is a wholly-owned subsidiary of private company Financial Times Group Limited, which is wholly owned by private company Nikkei Inc. No publicly held corporation owns 10% or more of the stock of The Financial Times Limited.

First Amendment Coalition is a nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

Forbes Media LLC is a privately owned company and no publicly held corporation owns 10% or more of its stock.

Free Press is a 501(c)(3) organization with no parent corporation and no stock.

WGBH Educational Foundation is a 501(c)(3) tax-exempt, charitable organization.

Guardian US's legal entity is Guardian News & Media LLC, a company incorporated in Delaware, whose registered office is at 315 West 36th St, New York, NY 10018. Guardian News

& Media LLC's parent corporation is Guardian News & Media Limited, a private company. No publicly held corporation owns 10% or more of Guardian US's stock.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

TheHuffingtonPost.com, Inc. (d/b/a "HuffPost") is an indirectly held subsidiary of BuzzFeed, Inc., a publicly traded company (NASDAQ:BZFD). No publicly held company owns 10% or more of BuzzFeed's stock.

The Inter American Press Association (IAPA) is a not-for-profit organization with no corporate owners.

The Intercept Media, Inc., publisher of The Intercept, is a non-profit non-stock corporation. It has no parent, subsidiaries, or affiliates.

The International Documentary Association is a not-for-profit organization with no parent corporation and no stock.

KQED Inc. is a nonprofit public benefit corporation. No entity or person has an ownership interest of 10 percent or more of KQED Inc.

LAist is operated by Southern California Public Radio, an independent nonprofit organization affiliated with the nonprofit support organization American Public Media Group, the largest station-based public radio organization in the U.S. Neither APMG nor its subsidiaries issue stock.

Los Angeles Times Communications LLC is wholly owned by NantMedia Holdings, LLC.

The McClatchy Company, LLC is privately owned by certain funds affiliated with Chatham Asset Management, LLC and does not have publicly traded stocks.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

The Media Law Resource Center has no parent corporation and issues no stock.

Minnesota Public Radio is owned by its nonprofit parent support organization, American Public Media Group, the largest station-based public radio organization in the U.S. Neither APMG nor its subsidiaries issue stock.

The National Freedom of Information Coalition is a nonprofit organization that has not issued any shares or debt securities to the public and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

The National Press Club Journalism Institute is a not-for-profit corporation that has no parent company and issues no stock.

The National Press Club is a not-for-profit corporation that has no parent company and issues no stock.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

National Public Radio, Inc. is a privately supported, not-for-profit membership organization that has no parent company and issues no stock.

Comcast Corporation and its consolidated subsidiaries own 100% of the common equity interests of NBCUniversal Media, LLC.

New England First Amendment Coalition has no parent corporation and no stock.

New England Newspaper and Press Association, Inc. is a non-profit corporation. It has no parent, and no publicly held corporation owns 10% or more of its stock.

The New Republic is a privately-held company owned by Win McCormack. No publicly held company owns ten percent or more of its equity interest.

New York Public Radio is a privately supported, not-for-profit organization that has no parent company and issues no stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including nearly 2,200 diverse news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Newsday LLC is a Delaware limited liability company whose members are Tillandsia Media Holdings LLC and Newsday Holdings LLC. Newsday Holdings LLC is an indirect subsidiary of Cablevision Systems Corporation. Cablevision Systems Corporation is (a) directly owned by Altice USA, Inc., a Delaware corporation, which is publicly traded on the New York Stock Exchange and (b) indirectly owned by Altice N.V., a Netherlands public company.

The News Guild – CWA is an unincorporated association. It has no parent and issues no stock.

Online News Association is a not-for-profit organization. It has no parent corporation, and no publicly traded corporation owns 10% or more of its stock.

Informed California Foundation, d/b/a Open Vallejo, is a California nonprofit corporation and an educational public charity organized pursuant to section 501(c)(3) of the U.S. Code. It has no parent corporation and issues no stock.

Oregon Public Broadcasting ("OPB") is a nonprofit public benefit corporation. It has no parent corporation and issues no stock.

PBS News Hour is a news brand within News Hour Productions LLC, a wholly owned nonprofit subsidiary of WETA.

PEN American Center, Inc. has no parent or affiliate corporation.

Penguin Random House LLC is a limited liability company whose ultimate parent corporation is Bertelsmann SE & Co. KGaA, a privately-held company.

The Pittsburgh Post-Gazette is published by the Venetoulis Institute for Local Journalism, which is a Delaware charitable nonstock corporation with no parent corporation.

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Pulitzer Center is a non-profit organization with no parent corporation and no stock.

Radio Television Digital News Association is a nonprofit organization that has no parent company and issues no stock.

Reuters News & Media Inc. is a Delaware corporation whose parent is Thomson Reuters U.S. LLC, a Delaware limited liability company. Reuters News & Media Inc. and Thomson Reuters U.S. LLC are indirect and wholly owned subsidiaries of Thomson Reuters Corporation, a publicly-held corporation, which is traded on the New York Stock Exchange and Toronto Stock Exchange. There are no intermediate parent corporations or subsidiaries of Reuters News & Media Inc. or Thomson Reuters U.S. LLC that are publicly held, and there are no publicly-held companies that own 10% or more of Reuters News & Media Inc. or Thomson Reuters U.S. LLC shares.

The Seattle Times Co. is a privately held company. No publicly held corporation owns 10% or more of its stock.

Slate is part of The Slate Group, a wholly owned subsidiary of Graham Holding Company.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Student Press Law Center is a 501(c)(3) not-for-profit corporation that has no parent and issues no stock.

Time USA, LLC is a privately held limited liability company. No publicly held corporation owns 10% or more of its stock.

The Tully Center for Free Speech is a subsidiary of Syracuse University.

USA Today Co., Inc., formerly known as Gannett Co., Inc., is a publicly traded company and has no affiliates or subsidiaries that are publicly owned.

Lupa Systems LLC is the parent company of Vox Media Group, LLC. No publicly held corporation owns 10% or more of the stock of Lupa Systems LLC.

WAMU 88.5, one of the founding NPR stations, is a broadcast licensee of American University's Board of Trustees. American University is a tax-exempt, nonprofit corporation. It has no parent entity and issues no stock.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

The Washington Sun is owned by NOTUS Media, LLC. No publicly held corporation owns 10% or more of the Washington Sun’s stock.

WBUR is owned and operated by The Trustees of Boston University, which holds the station's broadcast license. BU is a tax-exempt, nonprofit corporation. It has no parent entity and issues no stock.

WNET is a not-for-profit organization, supported by private and public funds, that has no parent company and issues no stock.

# TABLE OF CONTENTS

**Page:**


CORPORATE DISCLOSURE STATEMENTS ........ ii

TABLE OF AUTHORITIES ........ xii

INTEREST OF AMICI CURIAE ........ xviii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. White House correspondents work in spaces protected by the nonpublic forum doctrine, and they have historically played an essential role in informing the public about the office of the presidency. ........ 2

a. The government cannot restrict access to nonpublic fora based on the viewpoint of a speaker or without providing due process. ........ 2

b. Physical access to the White House is essential to reporting on the presidency, and without strong injunctive relief from this Court, that access is threatened. ........ 6

II. Stripping journalists and news outlets of their rights because of perceived editorial viewpoint violates decades of Supreme Court jurisprudence and is impermissible in any type of forum, including the White House. ........ 7

III. Expelling news organizations from the White House based on disfavored coverage is part of wider efforts from the administration to intimidate the press. ........ 11

CONCLUSION ........ 15

CERTIFICATE OF COMPLIANCE ........ 17

ADDENDUM: STATEMENTS OF INTEREST OF AMICI CURIAE ........ 18

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Associated Press v. Budowich*,
780 F. Supp. 3d 32 (D.D.C. 2025) .................... 5

*Associated Press v. Budowich*,
No. 25-5109, 2025 WL 1649265 (D.C. Cir. June 6, 2025),
*reconsideration en banc denied*, 2025 WL 2047025 (D.C. Cir. July 22, 2025) .................... 4, 5

*Ateba v. Leavitt*,
133 F.4th 114 (D.C. Cir. 2025),
*cert. denied*, 146 S. Ct. 822 (2025) .................... 2, 3, 4, 9

*Bryant v. Gates*,
532 F.3d 888 (D.C. Cir. 2008) .................... 2

*Cable News Network, Inc. v. Am. Broad. Cos., Inc.*,
518 F. Supp. 1238 (N.D. Ga. 1981) .................... 9

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) .................... 4

*Frank v. Herter*,
269 F.2d 245 (D.C. Cir. 1959) .................... 9

*Getty Images News Servs., Corp. v. Dep't of Defense*,
193 F. Supp. 2d 112 (D.D.C. 2002) .................... 9

*Hannegan v. Esquire, Inc.*,
327 U.S. 146 (1946) .................... 10

*Iancu v. Brunetti*,
588 U.S. 388 (2019) .................... 7

*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) .................... 2, 5, 6

*Mahoney v. U.S. Capitol Police Bd.*,
No. 24-5207, 2026 WL 2836881 (D.C. Cir. Sept. 22, 2026) .................... 5

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974) .................... 8

*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018) .......... 2

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 8, 9

*Nat'l Pub. Radio, Inc. v. Trump*,
827 F. Supp. 3d 48 (D.D.C. 2026) .......... 12

*Perry v. Sindermann*,
408 U.S. 593 (1972) .......... 9

*Police Dep't of Chi. v. Mosley*,
408 U.S. 92 (1972) .......... 1

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) .......... 6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .......... 8

*Sherrill v. Knight*,
569 F.2d 124 (D.C. Cir. 1977) .......... 3, 4, 5

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 8

**Statutes**

1 Stat. 596 (1798) .......... 9

**Other Authorities**

1 Annals of Cong. 952 (1789),
*available at* https://bit.ly/4j1E72H .......... 11

29 Cong. Globe 411 (1847),
*available at* https://bit.ly/4jccLGY .......... 11

Anuj C. Desai, *The Transformation of Statutes into Constitutional Law: How Early Post Office Policy Shaped Modern First Amendment Doctrine*,
58 Hastings L.J. 671 (2007) .......... 10

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 23 Media Orgs.,
*N.Y. Times Co. v. Dep't of Defense*, No. 25-04218-PLF (D.D.C Jan. 15, 2026),
ECF No. 17-1 .......... xix

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 36 Media Orgs. in Supp. of Pls.-Appellees Seeking Affirmance,
*N.Y. Times Co. v. Dep't of Defense*, No. 26-5113 (D.C. Cir. Sept. 21, 2026) .......................... 13

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 36 Media Orgs. in Supp. of Pls.-Appellees Seeking Affirmance,
*N.Y. Times Co. v. Dep't of Defense*, No. 26-5253 (D.C. Cir. Sept. 11, 2026) .......................... 12

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Comm. to Protect Journalists,
*Radio Free Europe/Radio Liberty, Inc. v. Lake*, No. 1:25-cv-00799-RCL (D.D.C. Mar. 28, 2025), ECF No. 17-1 .......................... xix

Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Indep. NPR Member Stations,
*Nat'l Pub. Radio, Inc. v. Trump*, No. 1:25-cv-01674-RDM (D.D.C. June 20, 2025), ECF No. 26-1 .......................... xix, 12

Br. of Amici Curiae Reps. Comm. for Freedom of the Press, Comm. to Protect Journalists, PEN Am., Press Freedom Ctr. at the Nat'l Press Club, & Soc'y of Pro. Journalists,
*Widakuswara v. Lake*, Nos. 25-5144, 25-5145, 25-5150, 25-5151 (D.C. Cir. July 28, 2025) .......................... xix

Br. of Amici Curiae Reps. Comm. for Freedom of the Press, White House Correspondents' Ass'n & 46 News & Media Orgs.,
*Associated Press v. Budowich*, No. 25-5109 (D.C. Cir. Oct. 6, 2025) .......................... xix

Br. of Proposed Amicus Curiae Reps. Comm. for Freedom of the Press in Supp. of Pls.' Mot. for a TRO & Prelim. Inj.,
*Am. Broad. Cos., Inc. v. FCC*, No. 1:26-cv-02902 (D.D.C. Sept. 17, 2026), ECF No. 45-1 .......................... 13

Br. of Reps. Comm. for Freedom of the Press as Amicus Curiae,
*Associated Press v. Budowich*, No. 1:25-cv-00532-TNM (D.D.C. Feb. 24, 2025), ECF No. 17-1 .......................... xix

Chris Young & Emily Vespa, *The FBI search of a Washington Post reporter's home: What we know and why it matters*,
Reps. Comm. for Freedom of the Press (Jan. 16, 2026), https://perma.cc/VKX5-R8XZ .......................... 14

ClintonLibrary42, *Pres. Clinton and P.M. Blair Joint Press Conference (1998)*, YouTube (Dec. 12, 2012), https://bit.ly/4cWOlNO .......................... 7

*Covering the White House*, White House Correspondents' Ass'n, https://perma.cc/9XTQ-XBGE (last visited Sept. 20, 2026). .......................... 3, 6

David Bauder, *Journalists turn in access badges, exit Pentagon rather than agree to new reporting rules*, AP News (Oct. 15, 2025), https://bit.ly/4xXPZGL ..... 12

David Folkenflik, *Justice Dept. drops 'New York Times' subpoenas under pressure from judge*, Nat'l Pub. Radio (July 23, 2026), https://bit.ly/4rBkeBy ..... 15

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 18, 2026, 3:04 PM), https://bit.ly/3Vriv5O ..... 1

Edward Helmore, *Blanche defends Trump's White House media ban: 'It is a privilege, not a right'*, The Guardian (Sept. 27, 2026), https://perma.cc/XGU8-NXPG ..... 1

Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech*, 134 Harv. L. Rev. 2299 (2021) ..... 10

Geoff Bennett & Karina Cuevas, *FBI searches reporter's home, raising concerns about intimidation of free press*, PBS News (Jan. 14, 2026), https://perma.cc/CE36-XWEN ..... 14

Gerald R. Ford Presidential Foundation, *Press Conference on Questions Related to Nixon September 16, 1974*, YouTube (Mar. 11, 2021), https://bit.ly/4y8kQkL ..... 6

Gregory Svirnovskiy, *Judge blocks Pentagon's press escort policy*, POLITICO (June 30, 2026), https://bit.ly/4ypRjDh ..... 12

James A. Jacobs, *The President, the Press, and Proximity*, White House Historical Ass'n (Mar. 1, 2015), https://perma.cc/4RTE-536E ..... 3

James Madison, *Report on the Virginia Resolutions*, *in* 4 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 546 (Jonathan Elliot ed., 1836), *available at* https://bit.ly/3VKW1Nd ..... 9

Jem Bartholomew, *The Uses of 'Treason'*, Colum. Journalism Rev. (July 20, 2026), https://perma.cc/PD28-6U66 ..... 15

Jocelyn Noveck, *ABC sues FCC over challenge to its broadcast licenses, saying actions present 'existential threat'*, AP News (Aug. 18, 2026), https://bit.ly/4AGaMB8 ..... 13

Katelyn Polantz et al., *CNN, MS NOW and Politico Sue Trump Administration Over White House Access*, CNN (Sept. 21, 2026), https://bit.ly/4e6SEGK ........ 7

Katie Robertson, *Trump Refiles $10 Billion Lawsuit Against The Wall Street Journal*, N.Y. Times (May 28, 2026), https://bit.ly/47sNu4a ........ 14

Leslie Kendrick, *Content Discrimination Revisited*, 98 Va. L. Rev. 231 (2012) ........ 11

Meg Kinnard & Josh Boak, *Judge dismisses Trump's $10 billion lawsuit against Wall Street Journal over reporting on Epstein ties*, PBS News (Apr. 13, 2026), https://perma.cc/45KR-DXK7 ........ 14

Megan Butler, *BBC revamps efforts to toss Trump's $10 billion defamation suit*, Courthouse News Serv. (Aug. 24, 2026), https://perma.cc/9P99-F7FQ ........ 14

Mem. in Supp. of Pls.' Mot. for TRO & Prelim. Inj., *Am. Broad. Cos., Inc. v. FCC*, No. 1:26-cv-02902 (D.D.C. Aug. 18, 2026), ECF No. 2-1 ........ 13

Michael M. Grynbaum, *U.S. Sought Phone Records of Times Journalists and Their Relatives*, N.Y. Times (July 20, 2026), https://bit.ly/3VoYcpG ........ 15

Op. Granting Pls.' Mot. for Prelim. Inj., *N.Y. Times Co. v. Dep't of Defense*, No. 26-cv-01690-PLF (D.D.C. June 30, 2026), ECF No. 17 ........ 12

Perry Stein, *DOJ Issued Subpoenas to Force Post, WSJ Reporters to Testify Before Grand Jury*, Wash. Post (June 23, 2026), https://wapo.st/4ypW3sx ........ 15

*President Trump Announces Medicaid Drug Price Discounts*, C-SPAN (Sept. 18, 2026), https://bit.ly/4y6oGdV ........ 1

*Remarks by President Trump in Press Briefing on COVID-19*, The White House (July 27, 2020), https://perma.cc/E88H-7ERA ........ 7

Sadie Gurman et al., *Trump's Complaints About Iran War Leaks Prompt Aggressive DOJ Investigations*, Wall St. J. (May 11, 2026), https://bit.ly/4d9dsgv ........ 14

Sara Fischer, *Judge tosses Trump's lawsuit against Des Moines Register*, Axios (Sept. 24, 2026), https://bit.ly/4yoYZFS ........ 13

Sarah J. Eckman, Cong. Rsch. Serv., R44816, *Congressional News Media and the House and Senate Press Galleries* (2017), https://perma.cc/9HPC-PMQW ........ 11

Scott Nover, *Trump refiles $15B suit against New York Times after judge's rebuke*, Wash. Post (Oct. 16, 2025), https://wapo.st/4dIaWOq ........ 13

Stephanie Weaver, *Trump's $15B lawsuit against The New York Times tossed*, LiveNOW Fox (Sept. 19, 2025), https://bit.ly/4iX0oyp ........ 13

The Obama White House, *The President Holds a Press Conference on the Nuclear Deal with Iran*, YouTube (July 15, 2015), https://bit.ly/4cY9ffD ........ 7

*Thomas Jefferson to Abigail Adams, 22 July 1804*, Nat'l Archives, https://perma.cc/84NJ-S8T4 (last visited Sept. 21, 2026) ........ 10

## INTEREST OF AMICI CURIAE

Proposed amici curiae are the Reporters Committee for Freedom of the Press, Advance Local Media LLC, Agence France-Presse, American Broadcasting Companies, Inc., The Associated Press, Association of Alternative Newsmedia, The Association of Minnesota Public Educational Radio Stations, The Atlantic Monthly Group LLC, Axios, The Baltimore Banner, Bloomberg News, Boston Globe Media Partners, LLC, C-SPAN, The Center for Investigative Reporting, Chicago Public Media, Inc., Committee to Protect Journalists, Condé Nast, Courthouse News Service, The Daily Beast Company LLC, Dow Jones & Company, Inc., The E.W. Scripps Company, Financial Times, First Amendment Coalition, Forbes Media LLC, Free Press, FRONTLINE / WGBH Educational Foundation, The Guardian U.S., Hearst Corporation, HuffPost, Inter American Press Association, The Intercept Media, Inc., International Documentary Assn., KQED Inc., LAist, Los Angeles Times Communications LLC, McClatchy Media Company, LLC, The Media Institute, Media Law Resource Center, Minnesota Public Radio, National Freedom of Information Coalition, National Press Club Journalism Institute, The National Press Club, National Press Photographers Association, National Public Radio, Inc., NBCUniversal Media, LLC, New England First Amendment Coalition, New England Newspaper and Press Association, Inc., The New Republic, New York Public Radio, The New York Times Company, News/Media Alliance, Newsday LLC, The NewsGuild - CWA, Online News Association, Open Vallejo, Oregon Public Broadcasting, PBS NewsHour, PEN America, Penguin Random House LLC, Pittsburgh Post-Gazette, Pro Publica, Inc., Pulitzer Center, Radio Television Digital News Association, Reuters News & Media Inc., The Seattle Times Company, Slate, Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, TIME USA, LLC, Tully Center for Free Speech, USA Today Co., Inc., Vox Media

Group, LLC, WAMU, The Washington Post, The Washington Sun, WBUR, and WNET (together, "amici").

Lead amicus the Reporters Committee for Freedom of the Press (the "Reporters Committee") is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media. Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources, the Reporters Committee today provides pro bono legal representation, amicus curiae support, and other resources to protect the legal rights of journalists. The Reporters Committee regularly appears as amicus in this and other federal and state courts on First Amendment issues of importance to journalists. *See* Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 23 Media Orgs., *N.Y. Times Co. v. Dep't of Defense*, No. 25-04218-PLF (D.D.C Jan. 15, 2026), ECF No. 17-1; Br. of Reps. Comm. for Freedom of the Press as Amicus Curiae, *Associated Press v. Budowich*, No. 1:25-cv-00532-TNM (D.D.C. Feb. 24, 2025), ECF No. 17-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press, White House Correspondents' Ass'n & 46 News & Media Orgs., *Associated Press v. Budowich*, No. 25-5109 (D.C. Cir. Oct. 6, 2025); Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Comm. to Protect Journalists, *Radio Free Europe/Radio Liberty, Inc. v. Lake*, No. 1:25-cv-00799-RCL (D.D.C. Mar. 28, 2025), ECF No. 17-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Indep. NPR Member Stations, *Nat'l Pub. Radio, Inc. v. Trump*, No. 1:25-cv-01674-RDM (D.D.C. June 20, 2025), ECF No. 26-1; Br. of Amici Curiae Reps. Comm. for Freedom of the Press, Comm. to Protect Journalists, PEN Am., Press Freedom Ctr. at the Nat'l Press Club, & Soc'y of Pro. Journalists, *Widakuswara v. Lake* (and related appeals), Nos. 25-5144, 25-5145, 25-5150, 25-5151 (D.C. Cir. July 28, 2025).

The addendum to this brief contains the statements of interest of other individual amici.

Amici are uniquely positioned to provide the Court with information and insight relevant to the Court's determination of Plaintiffs' Motion for a Preliminary Injunction. They include news outlets with White House credentials, organizations whose members hold such credentials, outlets from across the country that rely on the coverage of White House correspondents, and journalism and press freedom groups that advocate for First Amendment and newsgathering rights. Amici know firsthand the importance of physical access by the press to government places and personnel, as well as the need for independence from undue government influence so that journalists can keep the public informed and perform their watchdog role. The proposed brief highlights the history and importance of news media access to the White House, details how the President's actions violate decades of Supreme Court jurisprudence invalidating viewpoint discrimination, and contextualizes the eviction of disfavored news organizations from the White House within the administration's other efforts to punish the free press.

No party or party's counsel authored this brief in whole or in part, or made a monetary contribution intended to fund its preparation or submission. No person other than amici made a monetary contribution to the preparation or submission of this brief.

## INTRODUCTION

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). On September 18, 2026, the Trump administration flouted this constitutional doctrine when it banned three news organizations – CNN, MS NOW, and POLITICO – from White House grounds. While the White House and Justice Department continue to offer scattershot justifications for the ban, including a pretextual and post hoc "national security" rationale, the administration's conduct is transparently viewpoint discriminatory and thus illegal. In the President's words, he barred these outlets because he perceived them as "'reporting' FAKE NEWS" about him and his administration, with "Other Fake News Media Outlets to follow." Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 18, 2026, 3:04 PM), https://bit.ly/3Vriv5O. The President further accused these outlets of "purposely writ[ing] negative news" to "diminish" the administration and said they are "dishonest" and "terrible." *President Trump Announces Medicaid Drug Price Discounts*, at 27:46–28:25, 35:46–36:00, C-SPAN (Sept. 18, 2026), https://bit.ly/4y6oGdV. Indeed, the administration's condemnation of the organizations' reporting as "inaccurate" simply appears to be how the administration describes any reporting that it dislikes. *See* Edward Helmore, *Blanche defends Trump's White House media ban: 'It is a privilege, not a right'*, The Guardian (Sept. 27, 2026), https://perma.cc/XGU8-NXPG. The administration's actions violated the Constitution, and this Court enjoined them on September 24, 2026.

The amici coalition, which filed in support of CNN, MS NOW, and POLITICO when they applied for a temporary restraining order, takes the unusual step of filing again at the preliminary injunction stage because it remains concerned that the administration's response to

this lawsuit suggests that compliance with this Court's orders will be met with obstruction. Indeed, the President has previously indicated that evictions of other news organizations will follow. This ban – and any future bans – are intended to impair the vital work of news outlets covering the presidency, and this Court must not only intervene, *see Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (holding that deprivation of hard pass constitutes irreparable harm), but also take all appropriate measures to ensure that its injunctions are implemented. Amici write to emphasize that the impact of the administration's actions is felt by the press corps at large, that the expulsion of news media from the White House continues to injure the public interest, that unassailable First Amendment law makes any viewpoint-based decision to bar reporters from a nonpublic forum constitutionally repugnant, and that the ban is part of a broad series of actions the administration has taken in an effort to bend reporting to the will of the President.

## ARGUMENT

### I. White House correspondents work in spaces protected by the nonpublic forum doctrine, and they have historically played an essential role in informing the public about the office of the presidency.

#### *a. The government cannot restrict access to nonpublic fora based on the viewpoint of a speaker or without providing due process.*

A nonpublic forum is created where the government "provides 'selective access for individual speakers'" on "government property 'that is not by tradition or designation a forum for public communication.'" *Ateba v. Leavitt*, 133 F.4th 114, 121–22 (D.C. Cir. 2025), *cert. denied*, 146 S. Ct. 822 (2025) (first quoting *Bryant v. Gates*, 532 F.3d 888, 895 (D.C. Cir. 2008); then quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018)). As recently as last year, the D.C. Circuit confirmed that "the White House Press Area is a nonpublic forum" to which procedural and substantive protections attach. *Ateba*, 133 F.4th at 122–23.

The White House has included dedicated workspace in one form or another for members of the press "since completion of the West Wing's first iteration in 1902." James A. Jacobs, *The President, the Press, and Proximity*, White House Historical Ass'n (Mar. 1, 2015), https://perma.cc/4RTE-536E. Since 1970, the space has included a Press Briefing Room and designated workspace "in one of the oldest parts of the White House, nestled between the fabled residence and the West Wing, [which] is evidence alone of the key role the news media has come to play as an intermediary between the public and the executive branch of the United States government." *Id*. White House press facilities have historically been "perceived as being open to *all* bona fide Washington-based journalists." *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977) (emphasis added). To gain access to these facilities – and thereby to White House press briefings held in the briefing room and in many other portions of the White House complex – reporters apply for a "hard pass" or a temporary "day pass" from the White House Press Office, subject to a security screening process. *See Ateba*, 133 F.4th at 117 (summarizing differences in access with different passes). Additionally, some presidential events take place where not all White House correspondents can fit, such as press conferences in the Oval Office and during travel on Air Force One. *Covering the White House*, White House Correspondents' Ass'n, https://perma.cc/9XTQ-XBGE (last visited Sept. 20, 2026). In such situations, a "press pool" consisting of a smaller group of photographers, a television crew, and print, wire, and radio journalists typically covers presidential activities "on behalf of the broader corps of correspondents." *Id.*

These spaces are not traditionally or by designation fora for the public at large but are rather open only to selected individual speakers, making them classic nonpublic fora. *See Ateba*, 133 F.4th at 122–23. Indeed, factors that contributed to the D.C. Circuit's holding that the White

House press area is a nonpublic forum include that "the Press Area is limited to journalists who satisfy the White House's admission criteria and secure either a hard pass or a day pass to enter, subject to space availability" and that "[t]he purpose of the Press Area is to provide 'press facilities for correspondents who need to report therefrom,' thereby enabling select journalists to attend briefings by the Press Secretary and to gather information about the administration." *Id.* at 122 (quoting *Sherrill*, 569 F.2d at 129).

Generally, "[t]he First Amendment limits the restrictions that the government may impose on speech, including speech on government property." *Id.* at 119 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985)). In the case of a nonpublic forum, the government cannot restrict access to that forum unless the constraints are "reasonable" and "viewpoint neutral." *Id.* at 123. As the White House press facilities consist of nonpublic fora, access can only "be restricted as long as the restrictions are . . . not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius*, 473 U.S. at 800 (citation and internal quotation marks omitted). In other words, and of particular relevance in light of the President's expressly stated displeasure with the affected news organizations' editorial choices as the basis for the ban, in no instance may access to nonpublic fora be constrained in an unreasonable or viewpoint discriminatory manner.

Last year, the administration expelled another media organization – the Associated Press – from the pool, the Oval Office, and events in the East Room "unless it revised its Stylebook to refer to the Gulf of America, which President Trump had recently renamed from the Gulf of Mexico." *Associated Press v. Budowich*, No. 25-5109, 2025 WL 1649265, at *2 (D.C. Cir. June 6, 2025), *reconsideration en banc denied*, 2025 WL 2047025 (D.C. Cir. July 22, 2025). The AP sued, and the district court, finding that the pool and the affected spaces qualified as nonpublic

fora, enjoined the administration from denying the AP access to the pool and to limited-access events which journalists with a hard pass may attend with permission, such as press briefings held in the East Room, based on viewpoint. *Associated Press v. Budowich*, 780 F. Supp. 3d 32, 49–55 (D.D.C. 2025). While a panel of the D.C. Circuit later stayed the district court's preliminary injunction solely as to limited-access events in the Oval Office and "other similar spaces," it left the injunction in place insofar as it precluded the administration from excluding the AP from events in the East Room, which indisputably receives First Amendment protection as a nonpublic forum. *Budowich*, 2025 WL 1649265, at *1, *13, *26; *accord Mahoney v. U.S. Capitol Police Bd.*, No. 24-5207, 2026 WL 2836881, at *6 (D.C. Cir. Sept. 22, 2026) (speech regulations in a nonpublic forum must be viewpoint neutral). A merits appeal is currently pending before the D.C. Circuit.

In addition to substantive protections against viewpoint discrimination, there are also procedural protections that limit restrictions on access to nonpublic fora, including White House press facilities. Indeed, going back almost fifty years, the D.C. Circuit held that "access may not be denied arbitrarily or for less than compelling reasons." *Sherrill*, 569 F.2d at 129. And because journalists enjoy a protected First Amendment interest in obtaining press passes, possession or acquisition of a pass "qualifies as [a] liberty [interest] which may not be denied without due process of law under the [F]ifth [A]mendment." *Id.* at 130–31. Thus, if the White House denies an application for credentials, the government must provide "notice of the factual bases for denial, an opportunity for the applicant to respond to these, and a final written statement of the reasons for denial." *Id.* at 130. Similarly, a duly issued hard pass "may not be suspended without due process." *Karem*, 960 F.3d at 665. Accordingly, before revoking or suspending access to the White House, the government must at a minimum provide "some notice

of behavioral expectations" that might result in a sanction, along with notice of "the magnitude of the sanction that the White House might impose for [the journalist's] purported failure to heed any such expectations." *Id.* (citation omitted) (cleaned up). Here, CNN, MS NOW, and POLITICO received no notice, no opportunity to respond, and no final written statement before the President barred them from the White House grounds.

The ban on CNN, MS NOW, and POLITICO accomplishes exactly what longstanding D.C. Circuit precedent and most recently the stay panel in *Budowich* said the government cannot do: The administration prohibited three news organizations from access to *the entirety* of the White House and its grounds, with no process, due to the content of their reporting.

***b. Physical access to the White House is essential to reporting on the presidency, and without strong injunctive relief from this Court, that access is threatened.***

The core function of a White House correspondent is to "report on the president of the United States, to shine a light and hold the administration accountable." *Covering the White House*, *supra*. For decades, this kind of reporting has depended in part on physical access to White House grounds to ask questions of public officials "on behalf of the American People." *Id.* White House correspondents have long served as "surrogates for the public," *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion), by providing a firsthand, independent account of the activities of the executive branch, whether covering the daily work of the presidency or formal press conferences.

For example, reporters posed questions to President Gerald Ford during a 1974 press conference in the East Room about his pardon of President Richard Nixon, *see* Gerald R. Ford Presidential Foundation, *Press Conference on Questions Related to Nixon September 16, 1974*, YouTube (Mar. 11, 2021), https://bit.ly/4y8kQkL; to President Bill Clinton about the Monica Lewinsky affair during a 1998 joint press conference with British Prime Minister Tony Blair in

the East Room, *see* ClintonLibrary42, *Pres. Clinton and P.M. Blair Joint Press Conference (1998)*, YouTube (Dec. 12, 2012), https://bit.ly/4cWOlNO; to President Barack Obama during a 2015 press conference held in the East Room about his nuclear deal with Iran, *see* The Obama White House, *The President Holds a Press Conference on the Nuclear Deal with Iran*, YouTube (July 15, 2015), https://bit.ly/4cY9ffD; and to President Trump when he held daily briefings during the early days of the COVID-19 pandemic, *see Remarks by President Trump in Press Briefing on COVID-19*, The White House (July 27, 2020), https://perma.cc/E88H-7ERA. And that is to say nothing of the informal interactions a White House reporter has with administration officials on any given day to gather information of substantial public interest.

The ban at issue has already jeopardized this long tradition of access and transparency. For instance, prior to entry of the temporary restraining order, the revocation of CNN's hard passes meant that the network could not fulfill its assigned pool duties on September 21, 2026. That exclusion – a consequence of the administration physically barring CNN from the White House complex – meant pool coverage was unavailable that day for other outlets and thus for the public. *See* Katelyn Polantz et al., *CNN, MS NOW and Politico Sue Trump Administration Over White House Access*, CNN (Sept. 21, 2026), https://bit.ly/4e6SEGK. Amici respectfully submit that preliminary injunctive relief is necessary here to vindicate the public's interest in staying informed about the presidency and to avoid any chilling effect on other news organizations which routinely cover the White House.

**II. Stripping journalists and news outlets of their rights because of perceived editorial viewpoint violates decades of Supreme Court jurisprudence and is impermissible in any type of forum, including the White House.**

"Viewpoint discrimination is poison to a free society," *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring), and is presumptively unconstitutional in any forum. *See*

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (noting viewpoint discrimination impermissible even in a "limited public forum"). The government has no legitimate interest in "tilt[ing] public debate in a preferred direction," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578–79 (2011), even one it believes to be more noble or in line with its conception of what is "better balance[d]," *Moody v. NetChoice, LLC*, 603 U.S. 707, 741 (2024). The Constitution "leave[s] such judgments" – "'whether fair or unfair'" – "to speakers and their audiences." *Id.* at 719, 738 (quoting *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)).

Barring these three news organizations from access to the White House because they exercised their "editorial control and judgment" to cover issues in a way that the President views as negative "exacts a penalty on the basis of the content of a newspaper" much like any law that forbids publication or imposes a monetary sanction on its use. *See Tornillo*, 418 U.S. at 256–58 ("Governmental restraint on publishing need not fall into familiar or traditional patterns to be subject to constitutional limitations on governmental powers."). Here, the penalty is a particularly steep one: It deprives reporters and their audiences of timely, newsworthy information about the daily affairs of the presidency. It is designed to have a chilling effect, with the hope that it discourages other outlets from publishing stories that they fear might provoke similar sanctions. That chilling effect runs headlong into the First Amendment's basic promise that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

As the D.C. Circuit has recognized, when the government elects to "enabl[e] select journalists to attend briefings by the Press Secretary and to gather information about the

administration," it must comply with the First Amendment when determining who can do so. *Ateba*, 133 F.4th at 122. That rule accords with bedrock Supreme Court precedent, which recognizes that "even though a person has no 'right' to a valuable governmental benefit," the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). In keeping with that principle, courts have long held that nondiscriminatory principles must guide the selection of media representatives at Guantanamo Bay, *see Getty Images News Servs., Corp. v. Dep't of Defense*, 193 F. Supp. 2d 112, 120 (D.D.C. 2002); the selection of correspondents to travel to foreign soil otherwise off-limits to the public, *see Frank v. Herter*, 269 F.2d 245, 247–48 (D.C. Cir. 1959) (Burger, J., concurring); and the selection of the journalists who make up the White House press pool, *see Cable News Network, Inc. v. Am. Broad. Cos., Inc.*, 518 F. Supp. 1238, 1245 (N.D. Ga. 1981).

That the constitutional proscription against viewpoint discrimination is as crystal clear as it is today reflects centuries of experience, public policy, and jurisprudence. For example, the Sedition Act of 1798, which made it a crime to "publish[] any false, scandalous and malicious writing or writings against the government of the United States," 1 Stat. 596 (1798), was described by the Virginia legislature as violating "the right of freely examining public characters and measures, and of free communication among the people thereon, which has ever been justly deemed the only effectual guardian of every other right." James Madison, *Report on the Virginia Resolutions*, *in* 4 The Debates in the Several State Conventions on the Adoption of the Federal Constitution, 546, 553–54 (Jonathan Elliot ed., 1836), *available at* https://bit.ly/3VKW1Nd. While that law was "never tested in this Court, the attack upon its validity has carried the day in the court of history." *Sullivan*, 376 U.S. at 276. President

Jefferson pardoned those who had been convicted and sentenced under the Act because he believed it to be a constitutional "nullity as absolute and as palpable as if Congress had ordered us to fall down and worship a golden image." *Thomas Jefferson to Abigail Adams, 22 July 1804*, Nat'l Archives, https://perma.cc/84NJ-S8T4 (last visited Sept. 21, 2026).

The enduring hostility to viewpoint discrimination is also evidenced by debates over the Post Office Act of 1792, during which "members of Congress clearly worried about the possibility that postal agents might make viewpoint-based distinctions when determining access to the mail," Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech*, 134 Harv. L. Rev. 2299, 2315 (2021), including fears that allowing the Postmaster General to select newspapers for preferential access "would provide the government with a tool for propaganda," Anuj C. Desai, *The Transformation of Statutes into Constitutional Law: How Early Post Office Policy Shaped Modern First Amendment Doctrine*, 58 Hastings L.J. 671, 691 (2007). Rather than invite that possibility, Congress "settled on a policy that would permit all newspaper publishers to use the mail." *Id.* at 692. In addressing a challenge to the revocation of Esquire Magazine's second-class mailing permit under a later iteration of the law, the Supreme Court reiterated the view that "grave constitutional questions are immediately raised once it is said that the use of the mails is a privilege which may be extended or withheld on any grounds whatsoever," including imposing the "condition that certain economic or political ideas not be disseminated." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 156 (1946).

Similar traditions of access free from viewpoint discrimination emerged in the House and Senate chambers. For example, shortly after the House began permitting members of the public and the press access to its chamber in 1789, a congressman introduced a resolution seeking to censure the newspapers that had reported on House debates under the guise that those

newspapers "misrepresented these debates in the most glaring deviations from truth; often distorting the arguments of the members from the true meaning." 1 Annals of Cong. 952 (1789), *available at* https://bit.ly/4j1E72H. The resolution was withdrawn after a short debate, with another representative condemning it as "an attack upon the liberty of the press." *Id.* at 954. Later efforts to exclude members of the press from the Senate floor were similarly rejected. *See, e.g.*, 29 Cong. Globe 411 (1847), *available at* https://bit.ly/4jccLGY (arguing proposal's "inevitable consequence is[] to hold a rod over the editor" in restricting "[t]he freedom of the press"). By 1877, both "the House and Senate decided to create a committee of correspondents to oversee press gallery membership and administration." Sarah J. Eckman, Cong. Rsch. Serv., R44816, *Congressional News Media and the House and Senate Press Galleries* 1 (2017), https://perma.cc/9HPC-PMQW.

The law is so firmly settled that protection from viewpoint discrimination enjoys the same doctrinal position as other central principles of the First Amendment, such as the presumption against prior restraint. *See* Leslie Kendrick, *Content Discrimination Revisited*, 98 Va. L. Rev. 231, 242–43 & n.35 (2012) (collecting sources) ("There is a great deal of agreement that viewpoint discrimination is at the core of what the First Amendment forbids."). The textbook viewpoint discrimination in this record provides all the evidence needed to demonstrate that the expulsion of these news outlets from the White House is unconstitutional.

## III. Expelling news organizations from the White House based on disfavored coverage is part of wider efforts from the administration to intimidate the press.

Evicting White House correspondents is the latest in a series of actions the administration has taken to upend long-settled First Amendment protections and press freedoms. Those actions, like the ban here, feature express or implicit viewpoint discrimination, bolstering the record in this case. They also reflect a broad campaign to chill coverage the administration sees as

unfavorable. CNN, MS NOW, and POLITICO join a growing list of news organizations – including ABC, CBS, the Associated Press, the New York Times, the Wall Street Journal, the Washington Post, and NPR and PBS, along with their member stations – that the President and his administration have targeted on the basis of their speech. *See, e.g.*, *Nat'l Pub. Radio, Inc. v. Trump*, 827 F. Supp. 3d 48, 60 (D.D.C. 2026) (executive order directing all federal agencies to refrain from funding NPR and PBS constituted unconstitutional "viewpoint discrimination"); Br. of Amici Curiae Reps. Comm. for Freedom of the Press & Indep. NPR Member Stations, *Nat'l Pub. Radio, Inc. v. Trump*, No. 1:25-cv-01674-RDM (D.D.C. June 20, 2025), ECF No. 26-1.

Other examples of access restrictions include *Budowich* discussed *supra*, and the removal of the press corps from the Pentagon. David Bauder, *Journalists turn in access badges, exit Pentagon rather than agree to new reporting rules*, AP News (Oct. 15, 2025), https://bit.ly/4xXPZGL. The latter involves the Pentagon's issuance of a new press policy that restricted reporters' ability to do their jobs so severely that virtually the entire press corps refused to agree to it. *Id.* Instead, nearly all Pentagon press corps members turned in their badges. *Id.* The New York Times sued and won before the district court. The department put in place an interim policy, which the district court likewise found unconstitutional. That case is currently pending before the D.C. Circuit. *See* Gregory Svirnovskiy, *Judge blocks Pentagon's press escort policy*, POLITICO (June 30, 2026), https://bit.ly/4ypRjDh; Op. Granting Pls.' Mot. for Prelim. Inj., *N.Y. Times Co. v. Dep't of Defense*, No. 26-cv-01690-PLF (D.D.C. June 30, 2026), ECF No. 17; Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 36 Media Orgs. in Supp. of Pls.-Appellees Seeking Affirmance, *N.Y. Times Co. v. Dep't of Defense*, No. 26-5253 (D.C. Cir. Sept. 11, 2026); Br. of Amici Curiae Reps. Comm. for Freedom of the Press & 36 Media Orgs. in

Supp. of Pls.-Appellees Seeking Affirmance, *N.Y. Times Co. v. Dep't of Defense*, No. 26-5113 (D.C. Cir. Sept. 21, 2026).

The Trump administration has also harnessed the regulatory power of the Federal Communications Commission in this campaign. In April, the FCC ordered an early review of all of ABC's broadcast licenses, "years before they [were] set to expire," allegedly in response to "the network's diversity and inclusion practices." Jocelyn Noveck, *ABC sues FCC over challenge to its broadcast licenses, saying actions present 'existential threat'*, AP News (Aug. 18, 2026), https://bit.ly/4AGaMB8. The FCC initiated ABC's premature license renewal, however, shortly after late-night host Jimmy Kimmel angered the President with statements he made in a monologue, prompting the President to call for his firing. *Id.* The FCC's early renewal order is plainly pretextual, and ABC filed a First Amendment challenge to vindicate its rights, which is currently pending in the district court. *See Am. Broad. Cos., Inc. v. FCC*, No. 1:26-cv-02902 (D.D.C. Aug. 18, 2026); Br. of Proposed Amicus Curiae Reps. Comm. for Freedom of the Press in Supp. of Pls.' Mot. for TRO & Prelim. Inj., *Am. Broad. Cos., Inc. v. FCC*, No. 1:26-cv-02902 (D.D.C. Sept. 17, 2026), ECF No. 45-1.

The President has also filed a succession of defamation and consumer protection lawsuits against media outlets whose coverage he perceives as unfavorable. *See, e.g.*, Stephanie Weaver, *Trump's $15B lawsuit against The New York Times tossed*, LiveNOW Fox (Sept. 19, 2025), https://bit.ly/4iX0oyp ("U.S. District Judge Steven Merryday ruled that Trump's lawsuit was overly long and was full of 'tedious and burdensome' language that had no bearing on the legal case."); Scott Nover, *Trump refiles $15B suit against New York Times after judge's rebuke*, Wash. Post (Oct. 16, 2025), https://wapo.st/4dIaWOq; Sara Fischer, *Judge tosses Trump's lawsuit against Des Moines Register*, Axios (Sept. 24, 2026), https://bit.ly/4yoYZFS ("The dismissal is

an early court test of Trump's broader push to use litigation against media organizations over coverage he disputes."); Meg Kinnard & Josh Boak, *Judge dismisses Trump's $10 billion lawsuit against Wall Street Journal over reporting on Epstein ties*, PBS News (Apr. 13, 2026), https://perma.cc/45KR-DXK7; Katie Robertson, *Trump Refiles $10 Billion Lawsuit Against The Wall Street Journal*, N.Y. Times (May 28, 2026), https://bit.ly/47sNu4a; Megan Butler, *BBC revamps efforts to toss Trump's $10 billion defamation suit*, Courthouse News Serv. (Aug. 24, 2026), https://perma.cc/9P99-F7FQ.

Finally, while all administrations going back to George W. Bush's have used legal process against the press in investigations of unauthorized disclosures of national defense information, the current administration has done so in ways that are unprecedented. In January, for instance, the FBI executed a search warrant at the home of Washington Post reporter Hannah Natanson. Geoff Bennett & Karina Cuevas, *FBI searches reporter's home, raising concerns about intimidation of free press*, PBS News (Jan. 14, 2026), https://perma.cc/CE36-XWEN. The Justice Department sought the warrant and seizure as part of an investigation into a government contractor who had already been identified, charged, and taken into custody at the time the search warrant was executed. *Id.* Never before had the Justice Department searched a journalist's home in connection with a probe into the unauthorized disclosure of national defense information. Chris Young & Emily Vespa, *The FBI search of a Washington Post reporter's home: What we know and why it matters*, Reps. Comm. for Freedom of the Press (Jan. 16, 2026), https://perma.cc/VKX5-R8XZ. Similarly, earlier this year, the Justice Department served grand jury subpoenas for records on reporters from the Wall Street Journal and Washington Post. Sadie Gurman et al., *Trump's Complaints About Iran War Leaks Prompt Aggressive DOJ Investigations*, Wall St. J. (May 11, 2026), https://bit.ly/4d9dsgv; Perry Stein, *DOJ Issued*

*Subpoenas to Force Post, WSJ Reporters to Testify Before Grand Jury*, Wash. Post (June 23, 2026), https://wapo.st/4ypW3sx. In July, the Justice Department served another round of subpoenas on several New York Times reporters and two of their family members. Michael M. Grynbaum, *U.S. Sought Phone Records of Times Journalists and Their Relatives*, N.Y. Times (July 20, 2026), https://bit.ly/3VoYcpG. When challenged, the government withdrew all of the subpoenas. Stein, *supra*; David Folkenflik, *Justice Dept. drops 'New York Times' subpoenas under pressure from judge*, Nat'l Pub. Radio (July 23, 2026), https://bit.ly/4rBkeBy. In the quarter century before President Trump's second term, prosecutors had sought grand jury testimony to reveal journalists' confidential sources in unauthorized disclosure matters in just three cases. Now, in just the past year, administration officials have done so in four.

The President has gone so far as to label media reporting that displeases him "treason," a federal crime punishable by death. *See* Jem Bartholomew, *The Uses of 'Treason'*, Colum. Journalism Rev. (July 20, 2026), https://perma.cc/PD28-6U66. The record in this case could not be clearer that the adverse actions the White House has taken against members of the media – in the President's own words, a "ban on the free press" aimed at organizations that he accuses of writing "purposely negative stories," ECF No. 32-4 at 38:25-38:51, 53:38-53:58 – are based on their coverage of the President and his administration, a plain violation of the Constitution.

**CONCLUSION**

For the foregoing reasons, amici urge the Court to grant Plaintiffs' motion for a preliminary injunction.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record*
Lisa Zycherman (DC Bar No. 495277)
Gabriel Rottman (DC Bar No. 992728)
Marietta Catsambas (DC Bar No. 1617526)
Allyson Veile (DC Bar No. 1766038)
Annie Seminara (*of counsel*)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Email: bruce.brown@rcfp.org

*Counsel for Proposed Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

This amici curiae brief complies with the type-volume limit of LCvR 7(o)(4) because it is 25 or fewer pages.

This amici curiae brief complies with the typeface and type-style requirements of LCvR 5.1(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in size 12 font.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown (DC Bar No. 457317)
*Counsel of Record for Proposed Amici Curiae*

**ADDENDUM: STATEMENTS OF INTEREST OF AMICI CURIAE**

Advance Local Media LLC is named after the *Staten Island Advance*; it dates to 1922 and is known for its high-quality local journalism and has won four Pulitzer Prizes in the past five years.

AFP is one of the world's three major news agencies, and the only European one. Its mission is to provide rapid, comprehensive, impartial and verified coverage of the news and issues that shape our daily lives. With 2,600 employees of 135 different nationalities, AFP provides information in six languages and in all media. Its clients are the world's media, digital platforms, companies and institutions.

American Broadcasting Companies, Inc. is a broad-based communications company. Alone or through its subsidiaries, it owns ABC News, abcnews.com, and local broadcast television stations that regularly gather and report news to the public. ABC News produces the television programs *World News with David Muir*, *Good Morning America*, *Nightline*, *20/20*, and *This Week*, among others.

The Associated Press ("AP") is a news cooperative organized under the Not-for-Profit Corporation Law of New York. The AP's members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers. The AP operates from 280 locations in more than 100 countries. On any given day, AP's content can reach more than half of the world's population.

Association of Alternative Newsmedia ("AAN") is a not-for-profit trade association which represents over 100 alternative and independent news organizations across North America. There are a wide range of publications in AAN, but all share an intense focus on local news, culture and the arts; an emphasis on point-of-view reporting and narrative journalism; a

tolerance for individual freedoms and social differences; and an eagerness to report on issues and communities that many mainstream media outlets ignore. AAN members speak truth to power.

The Association of Minnesota Public Educational Radio Stations ("AMPERS") is an association of 17 independent community radio stations in Minnesota. AMPERS is the largest statewide association of community radio stations in the United States. The stations primarily serve underserved populations including greater Minnesota, tribal nations, diverse communities, and students.

The Atlantic Monthly Group LLC is the publisher of *The Atlantic* and TheAtlantic.com. Founded in 1857 by Oliver Wendell Holmes, Ralph Waldo Emerson, Henry Wadsworth Longfellow and others, *The Atlantic* continues its 160-year tradition of publishing award-winning journalism that challenges assumptions and pursues truth, covering national and international affairs, politics and public policy, business, culture, technology and related areas.

Axios Media Inc. is a digital media company with a mission to deliver news in an efficient format that helps professionals get smarter faster across an array of topics, including politics, science, business, health, tech, media, and local news.

The Baltimore Banner is a nonprofit news organization serving communities across Maryland. It is the largest newsroom in Maryland and won the 2025 Pulitzer Prize for Local Reporting.

Bloomberg News' newsroom of more than 3,000 journalists and analysts delivers thousands of stories a day, producing content that is featured across multiple platforms, including digital, TV, video, audio, print, and live events.

Boston Globe Media Partners, LLC publishes The Boston Globe, the largest daily newspaper in New England.

C-SPAN, the private nonprofit public affairs media organization providing Americans with unfiltered access to government proceedings, was created in 1979 as a public service by the cable television industry. C-SPAN receives no government funding and is supported primarily through license fees paid by the cable, satellite and streaming companies that distribute the C-SPAN Networks. Its nonpartisan, uninterrupted programming includes gavel-to-gavel televised coverage of the U.S. House of Representatives and the U.S. Senate, plus extensive coverage of the presidency and executive branch officials. In addition, C-SPAN provides coverage of public policy events and programs focused on newsmakers, journalists, public officials, American history and commentary from the public representing a wide range of political and policy voices. C-SPAN connects with millions of Americans through its three commercial-free TV networks, C-SPAN Radio, C-SPAN podcasts, the C-SPAN Now app, a connected-TV streaming app C-SPAN Select, C-SPAN.org, and various social media platforms.

The Center for Investigative Reporting, Inc. is the nation's oldest nonprofit investigative newsroom in the country that runs the brands Mother Jones, Reveal, and CIR Studios. Mother Jones is a reader-supported news magazine and website known for ground-breaking investigative and in-depth journalism on issues of national and global significance. Reveal produces investigative journalism for the Reveal national public radio show and podcast, and CIR Studios produces feature length documentaries distributed on Netflix, Hulu, and other streaming channels. Reveal often works in collaboration with other newsrooms across the country.

Chicago Public Media, Inc. is the owner and operator of WBEZ 91.5 and publisher of the *Chicago Sun-Times*. The Chicago Sun-Times has been a stalwart of Chicago media for several decades. It operates in print and on the internet at chicago.suntimes.com. In 2022, the Sun-Times joined Chicago Public Media, a 501(c)(3) nonprofit organization. Chicago Public Media

also operates radio station WBEZ that broadcasts local and national news and iconic programming on 91.5 FM radio and streaming on the internet at wbez.org.

The Committee to Protect Journalists is an independent, nonprofit organization that promotes press freedom worldwide. CPJ defends the right of journalists to report the news without fear of reprisal. CPJ is made up of over 60 experts around the world, with headquarters in New York City. A board of prominent journalists from around the world helps guide CPJ's activities.

Condé Nast's global magazine and digital brand portfolio includes titles such as The New Yorker, Vanity Fair, Wired, Vogue, and GQ.

Courthouse News Service is a California-based legal news service that publishes a daily news website with a focus on politics and law. The news service also publishes daily reports on new civil actions and appellate rulings in both state and federal courts throughout the nation. Subscribers to the daily reports include law firms, universities, corporations, governmental institutions, and a wide range of media including newspapers, television stations and cable news services.

The Daily Beast delivers award-winning original reporting and sharp opinions from big personalities in the arenas of politics, pop-culture, world news, and more.

Dow Jones & Company is the world's leading provider of news and business information. Through *The Wall Street Journal*, *Barron's*, MarketWatch, Dow Jones Newswires, and its other publications, Dow Jones has produced journalism of unrivaled quality for more than 130 years and today has one of the world's largest newsgathering operations. Dow Jones's professional information services, including the Factiva news database and Dow Jones Risk &

Compliance, ensure that businesses worldwide have the data and facts they need to make intelligent decisions. Dow Jones is a News Corp company.

The E.W. Scripps Company is one of the nation's largest local TV broadcasters, operating a portfolio of 60 stations in 40 markets. Scripps also owns Scripps Networks, which reaches households across the U.S. with national news outlet Scripps News and popular entertainment brands ION, Bounce, Grit, and Laff. Scripps Sports serves professional and college sports leagues, conferences and teams with local and national broadcasts. The company also is the longtime steward of the Scripps National Spelling Bee.

The Financial Times is one of the world's leading news organisations, recognised internationally for its authority, integrity and accuracy. Its titles include the Financial Times newspaper and www.ft.com website, with an emphasis on financial journalism and political, economic and social analysis.

First Amendment Coalition (FAC) is a nonprofit public interest organization dedicated to defending free speech, free press and open government rights in order to make government, at all levels, more accountable to the people. The Coalition's mission assumes that government transparency and an informed electorate are essential to a self-governing democracy. FAC advances this purpose by working to improve governmental compliance with state and federal open government laws. FAC's activities include free legal consultations on access to public records and First Amendment issues, educational programs, legislative oversight of California bills affecting access to government records and free speech, and public advocacy, including extensive litigation and appellate work.

Forbes Media LLC is the publisher of Forbes Magazine as well as an array of investment newsletters and the leading business news website, Forbes.com. Forbes has been covering American and global business since 1917.

Free Press is a national, nonpartisan, non-profit organization with approximately 1.5 million members in the United States and around the world. Since its founding in 2003, Free Press has sought to advance the media and transform democracy in furtherance of a just society. Free Press advocates for equitable access to open channels of communication, the right of journalists and others to gather and report on information as well as the public's right to see, hear and read that information—all of which are crucial to a functioning democracy. Free Press has participated in numerous court and agency proceedings on media, telecommunications, and technology law topics, including those involving First Amendment issues.

WGBH is the leading multiplatform creator for public media in America and the proud producer of FRONTLINE, PBS' award-winning documentary series, as well as PBS programs MASTERPIECE, ANTIQUES ROADSHOW, NOVA, AMERICAN EXPERIENCE and a distinctive local news service. We deliver compelling stories, experiences, and information to audiences wherever they are: on PBS, YouTube, social media, television (GBH 2, GBH 44, WORLD, Create, Boston Kids and Family, and GBH Kids); radio (GBH 89.7, CRB Classical 99.5); and on gbh.org.

Guardian US is the New York City-based American online presence, through the website https://www.theguardian.com/us, of the British print newspaper The Guardian and its website theguardian.com. Launched in September 2011, Guardian US covers American and international news for an online, global audience. Guardian US is renowned for the Paradise Papers investigation and other award-winning work including the NSA revelations, Panama Papers and

The Counted investigations. The website theguardian.com is one of the world's leading English-language newspaper websites and operates two international online editions of the Guardian - Guardian US (Guardian News & Media LLC) and Guardian Australia (GNM Australia PTY Ltd). Traffic from outside the UK now represents around two-thirds of the Guardian's total digital audience.

Hearst is one of the nation's largest diversified media, information and services companies with more than 360 businesses. Its major interests include ownership of 15 daily and more than 30 weekly newspapers, including the San Francisco Chronicle, Houston Chronicle, and Albany Times Union; hundreds of magazines around the world, including Cosmopolitan, Good Housekeeping, ELLE, Harper's BAZAAR and O, The Oprah Magazine; 31 television stations such as KCRA-TV in Sacramento, Calif. and KSBW-TV in Monterey/Salinas, CA, which reach a combined 19 percent of U.S. viewers; ownership in leading cable television networks such as A&E, HISTORY, Lifetime and ESPN; global ratings agency Fitch Group; Hearst Health; significant holdings in automotive, electronic and medical/pharmaceutical business information companies; Internet and marketing services businesses; television production; newspaper features distribution; and real estate.

HuffPost is a news and information website owned by BuzzFeed, Inc., a social news and entertainment company that provides shareable breaking news, original reporting, entertainment, and video across the social web to its global audience of more than 200 million.

The Inter American Press Association (IAPA) is a not-for-profit organization dedicated to the defense and promotion of freedom of the press and of expression in the Americas. It is made up of more than 1,300 publications from throughout the Western Hemisphere and is based in Miami, Florida.

The Intercept Media, Inc. is a non-profit digital media venture committed to rigorous, adversarial journalism in the public interest.

The International Documentary Association (IDA) is a nonprofit membership organization that supports documentary makers worldwide by providing access to knowledge and connections while advocating for changes that uphold their needs, rights and interests. IDA supports the vital work of documentary makers and champions a thriving and inclusive documentary culture.

KQED Inc. is a nonprofit public benefit corporation organized under the laws of California and engaged in dissemination of news and information since its founding as a public broadcasting station in 1953. At all times relevant to this proceeding, KQED's core mission has been the pursuit and publication/broadcast of information in the public's interest. KQED has advanced this purpose not only through its consistent San Francisco Bay Area and statewide news reporting, which relies heavily on the use of the California Public Records Act, but also as a champion of public access to some of the most serious information maintained by government: law enforcement use of deadly force, police misconduct, and the broader operations of our state's criminal justice system.

LAist is L.A.'s largest NPR station, operated by Southern California Public Radio. Its signal stretches north to Santa Barbara County, south to Orange County and east to the Inland Empire. It operates LAist.com, a local news site. Its mission is to strengthen the civic and cultural bonds that unite Southern California's diverse communities by providing the highest quality news and information service.

Los Angeles Times Communications LLC is one of the largest daily newspapers in the United States. Its popular news and information website, www.latimes.com, attracts audiences throughout California and across the nation.

The McClatchy Company, LLC is a publisher of iconic brands such as the *Miami Herald*, *The Kansas City Star*, *The Sacramento Bee*, *The Charlotte Observer*, *The* (Raleigh) *News & Observer*, and the *Fort Worth Star-Telegram*. McClatchy operates media companies in 30 U.S. markets in 16 states, providing each of its communities with high-quality news and advertising services in a wide array of digital and print formats. McClatchy is headquartered in Sacramento, California.

The Media Institute is a nonprofit foundation specializing in communications policy issues founded in 1979. The Media Institute exists to foster three goals: freedom of speech, a competitive media and communications industry, and excellence in journalism. Its program agenda encompasses all sectors of the media, from print and broadcast outlets to cable, satellite, and online services.

The Media Law Resource Center, Inc. ("MLRC") is a non-profit professional association for content providers in all media, and for their defense lawyers, providing a wide range of resources on media and content law, as well as policy issues. These include news and analysis of legal, legislative and regulatory developments; litigation resources and practice guides; and national and international media law conferences and meetings. It counts as members over 125 media companies, including newspaper, magazine and book publishers, TV and radio broadcasters, and digital platforms, and over 200 law firms working in the media law field. The MLRC was founded in 1980 by leading American publishers and broadcasters to assist in defending and protecting free press rights under the First Amendment.

Minnesota Public Radio (MPR) is one of the nation's premier public radio organizations, producing programming for radio, digital and live audiences. Operating a 45-station terrestrial radio network, MPR serves nearly all of Minnesota and parts of surrounding states. MPR's three regional services—MPR News, YourClassical MPR and The Current—reach 1 million listeners each week. MPR's mission is to create the future of public media by amplifying voices to inform, include, and inspire.

The National Freedom of Information Coalition is a national nonprofit, nonpartisan organization of state and regional affiliates representing 45 states and the District of Columbia. Through its programs and services and national member network, NFOIC promotes press freedom, litigation and legislative and administrative reforms that ensure open, transparent, and accessible state and local governments and public institutions.

The National Press Club Journalism Institute is the non-profit affiliate of the National Press Club, founded to advance journalistic excellence for a transparent society. A free and independent press is the cornerstone of public life, empowering engaged citizens to shape democracy. The Institute promotes and defends press freedom worldwide, while training journalists in best practices, professional standards and ethical conduct to foster credibility and integrity.

The National Press Club is the world's leading professional organization for journalists. Founded in 1908, the Club has 3,100 members representing most major news organizations. The Club defends a free press worldwide. Each year, the Club holds over 2,000 events, including news conferences, luncheons and panels, and more than 250,000 guests come through its doors.

The National Press Photographers Association ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing, and distribution. NPPA's members include television and still photographers, editors, students, and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, NPPA has served as the *Voice of Visual Journalists*, vigorously promoting the constitutional rights of journalists and freedom of the press in all its forms, especially as it relates to visual journalism. The submission of this brief was duly authorized by Mickey H. Osterreicher, its General Counsel.

National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public. NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term. NPR reaches approximately 60 million people each week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube video content. NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to more than 260 NPR members and numerous other NPR-affiliated entities.

NBCUniversal Media, LLC is one of the world's leading media and entertainment companies. Among other businesses, NBCUniversal Media, LLC owns and operates the NBC television network, the Spanish-language television network Telemundo, NBC News, and a local English and Spanish-language television-stations group. NBC News produces the "Today" show, "NBC Nightly News," "Dateline NBC," and "Meet the Press."

New England First Amendment Coalition is a non-profit organization working in the six New England states to defend, promote and expand public access to government and the work it

does. The coalition is a broad-based organization of people who believe in the power of transparency in a democratic society. Its members include lawyers, journalists, historians and academicians, as well as private citizens and organizations whose core beliefs include the principles of the First Amendment. The coalition aspires to advance and protect the five freedoms of the First Amendment, and the principle of the public's right to know in our region. In collaboration with other like-minded advocacy organizations, NEFAC also seeks to advance understanding of the First Amendment across the nation and freedom of speech and press issues around the world.

New England Newspaper and Press Association, Inc. ("NENPA") is the regional association for newspapers in the six New England States (including Massachusetts). NENPA's corporate office is in Dedham, Massachusetts. Its purpose is to promote the common interests of newspapers published in New England. Consistent with its purposes, NENPA is committed to preserving and ensuring the open and free publication of news and events in an open society.

The New Republic is a daily publisher of stories advocating for liberal reforms in a modern age. For over 110 years, the New Republic has published stories seeking to reclaim democratic faith in the common world.

With an urban vibrancy and a global perspective, New York Public Radio produces innovative public radio programs, podcasts, and live events that touch a passionate community of 23.4 million people monthly on air, online and in person. From its state-of-the-art studios in New York City, NYPR is reshaping radio for a new generation of listeners with groundbreaking, award-winning programs including Radiolab, On the Media, The Takeaway, and Carnegie Hall Live, among many others. New York Public Radio includes WNYC, WQXR, WNYC Studios,

Gothamist, The Jerome L. Greene Performance Space, and New Jersey Public Radio. Further information about programs, podcasts, and stations may be found at www.nypublicradio.org.

The New York Times Company is the publisher of *The New York Times* and operates the news website nytimes.com.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including over 2000 news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Newsday LLC ("Newsday") is the publisher of the daily newspaper, Newsday, and related news websites. Newsday is one of the nation's largest daily newspapers, serving Long Island through its portfolio of print and digital products. Newsday has received 19 Pulitzer Prizes and other esteemed awards for outstanding journalism.

The News Guild – CWA is a labor organization representing more than 25,000 employees of newspapers, newsmagazines, news services and other media enterprises. Guild representation comprises, in the main, the editorial and online departments of these media outlets. The News Guild is a sector of the Communications Workers of America. CWA is America's largest communications and media union, representing over 500,000 men and women in both private and public sectors.

The Online News Association is the world's largest association of digital journalists. ONA's mission is to inspire innovation and excellence among journalists to better serve the public. Membership includes journalists, technologists, executives, academics and students who produce news for and support digital delivery systems. ONA also hosts the annual Online News Association conference and administers the Online Journalism Awards.

Open Vallejo is an award-winning, independent, non-partisan, nonprofit newsroom serving the public interest. Open Vallejo seeks to illuminate a small city long burdened by police violence, corruption, and neglect. As the first project of the Informed California Foundation, Open Vallejo is also a permanent design laboratory for open source, high-impact, broadly-accessible frameworks for ensuring local transparency, accountability, and information justice.

Oregon Public Broadcasting ("OPB") is an independent, nonprofit media organization serving communities across Oregon and the Pacific Northwest. Powered by member support, OPB connects people through trusted journalism that is freely accessible to everyone. OPB delivers in-depth, fact-driven coverage, stories and programs about politics, science and the environment, arts and culture, education, and more.

PBS News is the primary daily, breaking and special news producer for PBS. It produces PBS News Hour, Washington Week with The Atlantic, Horizons from PBS News, and Compass Points from PBS News; primetime and daytime breaking news and political specials; and documentaries. PBS News also maintains a robust footprint across digital and social platforms, including YouTube. PBS News Hour is co-anchored by Amna Nawaz and Geoff Bennett. It serves as public television's marquee news program and features the latest news, analysis, field reports from around the world, and live studio interviews and discussions. For over 50 years, millions have turned to the nightly broadcast for the solid, reliable reporting that has made News Hour the most objective and credible news programs on television. Jeffrey Goldberg is the moderator of Washington Week with The Atlantic, the longest-running primetime news and public affairs program on television.

PEN American Center, Inc. ("PEN America") is a nonpartisan nonprofit organization working at the intersection of literature and human rights. Founded in 1922, PEN America

advocates for free expression and the interests of writers and journalists in the United States and abroad. Its membership includes more than 5,000 writers, journalists, literary professionals, and readers nationwide. PEN America protects press freedom and journalists by combatting disinformation, defending journalists against online abuse, and supporting local news.

Penguin Random House LLC publishes adult and children's fiction and nonfiction in print and digital trade book form in the U.S. The Penguin Random House global family of companies employ more than 10,000 people across almost 250 editorially and creatively independent imprints and publishing houses that collectively publish more than 15,000 new titles annually. Its publishing lists include more than 60 Nobel Prize laureates and hundreds of the world's most widely read authors, among whom are many investigative journalists covering domestic politics, the justice system, business and international affairs.

The Pittsburgh Post-Gazette, which traces its history to 1786, serves Pittsburgh and western Pennsylvania and has received multiple Pulitzer Prizes, including the 2019 Pulitzer Prize for Breaking News Reporting.

Pro Publica, Inc. ("ProPublica") is an independent, nonprofit newsroom that produces investigative journalism in the public interest. It has won six Pulitzer Prizes, most recently a 2020 prize for national reporting, the 2019 prize for feature writing, and the 2017 gold medal for public service. ProPublica is supported almost entirely by philanthropy and offers its articles for republication, both through its website, propublica.org, and directly to leading news organizations selected for maximum impact. ProPublica has extensive regional and local operations, including ProPublica Illinois, which began publishing in late 2017 and was honored (along with the Chicago Tribune) as a finalist for the 2018 Pulitzer Prize for Local Reporting, an

initiative with the Texas Tribune, which launched in March 2020, and a series of Local Reporting Network partnerships.

Pulitzer Center, based in Washington, DC, was founded in 2006 as a non-profit journalism organization dedicated to enabling in-depth engagement with underreported global affairs through the support of quality journalism across all media platforms and a unique program of public outreach and education. The Center supports over 250 reporting projects each year, working with major news outlets globally and locally in nearly 100 countries.

Radio Television Digital News Association ("RTDNA") is the world's largest and only professional organization devoted exclusively to electronic journalism. RTDNA is made up of news directors, news associates, educators and students in radio, television, cable and electronic media in more than 30 countries. RTDNA is committed to encouraging excellence in the electronic journalism industry and upholding First Amendment freedoms.

Reuters, the news and media division of Thomson Reuters, is the world's largest multimedia news provider. Founded in 1851, it is committed to the Trust Principles of independence, integrity and freedom from bias. With unmatched coverage in over 16 languages, and reaching billions of people worldwide every day, Reuters provides trusted intelligence that powers humans and machines to make smart decisions. It supplies business, financial, national and international news to professionals via desktop terminals, the world's media organizations, industry events and directly to consumers.

The Seattle Times Company, locally owned since 1896, publishes the daily newspaper *The Seattle Times*, together with the *Yakima Herald-Republic* and *Walla Walla Union-Bulletin*, all in Washington state.

The Slate Group publishes Slate, a daily online magazine. Slate features articles and podcasts analyzing news, politics and contemporary culture.

The Society of Environmental Journalists is the only North American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

Society of Professional Journalists ("SPJ") is dedicated to improving and protecting journalism. It is the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior. Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

Student Press Law Center ("SPLC") is a nonprofit, nonpartisan organization which, since 1974, has been the nation's only legal assistance agency devoted exclusively to defending and advancing the free press rights of high school and college journalists. SPLC provides free legal help, information and educational materials for student journalists on a variety of legal topics.

TIME is a global multimedia brand that reaches a combined audience of more than 100 million around the world. TIME's major franchises include the TIME100 Most Influential People, Person of the Year, Best Inventions, World's Greatest Places, and more. With 58 million social media followers, TIME is one of the most trusted and recognized sources of news and information in the world.

The Tully Center for Free Speech began in Fall, 2006, at Syracuse University's S.I. Newhouse School of Public Communications, one of the nation's premier schools of mass communications.

USA Today Co., Inc., formerly known as Gannett, is the largest local newspaper company in the United States. Its more than 200 local daily brands in 43 states—together with the iconic USA TODAY—reach an estimated digital audience of 180 million each month.

Vox Media Group, LLC owns *New York* Magazine, Vox, and the Vox Media Podcast Network.

WAMU 88.5, one of the founding NPR stations, is the leading public radio station for NPR news and information in the greater Washington D.C. area. Since 1961, it has provided programming to an audience of listeners that now totals almost 1 million listeners on-air, online, and on demand. WAMU is member-supported, professionally-staffed, and licensed to American University, a private, student-centered research institution located in Washington, DC that is committed to advancing knowledge and preparing the next generation of leaders to effect positive change in our community and throughout the world. To ensure that WAMU remains independent and can fulfill its mission, WAMU maintains independence from American University on all editorial matters and over how WAMU's editorial work is published, broadcast or conveyed.

The Washington Post (formally, WP Company LLC d/b/a The Washington Post) is a news organization based in Washington, D.C. It publishes The Washington Post newspaper and the website www.washingtonpost.com, and produces a variety of digital and mobile news applications. The Post has won Pulitzer Prizes for its journalism, including the award in 2020 for explanatory reporting.

The Washington Sun is a news site devoted to the politics, policy, and people of Washington with an unwavering commitment to original reporting, deep sourcing, and accuracy.

WBUR is Boston's NPR. It is a public media leader committed to producing high-quality journalism and enriching experiences that foster understanding, connection and community for an expanding circle of people. WBUR is owned and operated by The Trustees of Boston University, which holds the station's broadcast license.

WNET is a nonprofit public media organization and the parent company of New York's PBS stations THIRTEEN and WLIW; the broadcast channels THIRTEEN PBS KIDS, THIRTEEN WORLD, and WLIW Create; WLIW-FM, Long Island's only NPR station; ALL ARTS, an arts and culture media provider; and PBS Nature, a free ad-supported streaming channel. For more than sixty years, WNET has produced and distributed news, public affairs, documentary, arts, and educational programming. Its productions include the PBS series *Amanpour and Company*, *Nature*, *Great Performances*, and *American Masters*.