**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., MS NOW CABLE, LLC, POLITICO LLC, ET AL., *Plaintiffs,* v. DONALD J. TRUMP, ET AL., *Defendants.* | Civil Case No. 1:26-cv-03287-TJK **DECLARATION OF JULIA MARSH** |

**DECLARATION OF JULIA MARSH**

I, Julia Marsh, hereby declare as follows:

1. I am Executive Editor, Washington of POLITICO LLC (POLITICO). I am over 18 years of age, am competent, and make this declaration based upon my own personal knowledge and on information available to me in my role at POLITICO. I make this declaration in support of Plaintiffs' Motion for a Further Preliminary Injunction. If called to do so, I could and would competently testify to these matters under oath.

2. POLITICO has been a member of the White House print press pool rotation since 2007. Before September 18, 2026, it received and performed its print pool assignments in the ordinary course.

3. When POLITICO serves as the print pooler, its reporters accompany the pool into the Oval Office, Air Force One, and to other presidential events designated for pool coverage. From those settings, its reporters file written pool reports that are distributed to hundreds of news organizations within minutes. The White House facilitates these assignments by identifying the print pooler in its daily guidance and press schedule. POLITICO, in turn, has structured its White

House coverage around these assignments and pays the travel and staffing costs necessary to carry them out.

4. Before September 18, 2026, to my knowledge, the White House had never removed POLITICO from a scheduled print pool assignment or excluded one of its journalists from a pool event. Nor am I aware of any standard the White House has articulated for removing a member of the print pool from a scheduled rotation or excluding its journalists from pool events.

5. On October 4, 2026, POLITICO learned from White House Press Office staff that it would not be permitted to serve as the print pooler for the President's October 5, 2026 trip to Nebraska. POLITICO had been scheduled to serve as the print pooler for that trip as part of the White House print press pool rotation. Because POLITICO was not permitted to serve as the print pooler for the October 5 trip, it was unable to perform its assigned print pool duties or travel with the President to Nebraska. The White House gave POLITICO no notice that it would be excluded, identified no standard or reason for the exclusion, afforded POLITICO no opportunity to be heard, and has not provided POLITICO an explanation for its exclusion from the October 5 print pool assignment.

6. On October 26, 2026, the White House again barred POLITICO from traveling aboard Air Force One when it was scheduled to serve as the print pooler for the President's trip to Mississippi. As with the prior exclusion, the White House gave POLITICO no notice, offered no explanation, and afforded POLITICO no opportunity to be heard.

7. At no point has the White House informed POLITICO that it has been removed from the print pool rotation, articulated any standard governing its exclusion of POLITICO from scheduled pool assignments, or identified any process by which POLITICO could contest those

exclusions. POLITICO remains a member of the print pool rotation, is next scheduled to serve as the print pooler on November 13, 2026, and stands ready to perform its assignments.

8. On October 19, 2026, William O. Scharf, Counsel to the President, wrote to POLITICO's Global Editor-in-Chief concerning three articles published between October 14 and 17 about White House Chief of Staff Susan Wiles. The letter characterized the articles as "demonstrably false and defamatory" and called on POLITICO to correct or retract them, publicly apologize to the President and Ms. Wiles, and remove the reporting from its digital archives. It stated that failure to comply or justify the publications within 48 hours would prompt "an immediate review of Politico's relationship with the White House" and "consideration of all other appropriate and available legal remedies." The letter identified no rule, regulation, or standard of "professionalism and decorum" that POLITICO had violated. Instead, it linked the proposed review of POLITICO's relationship with the White House to the content of its reporting.

9. On October 21, 2026, POLITICO responded to the letter, categorically rejecting accusations that it published "purposeful falsehoods designed to mislead the public," explaining that it reviewed all three articles identified and made a correction to one of the three articles, and stating that the letter was further evidence of the retaliatory and viewpoint-discriminatory motives underlying the President's ban. Promptly and transparently making corrections, as POLITICO did, is a hallmark of journalistic ethics and integrity, and of the very professionalism that the letter claimed POLITICO lacks.

10. The White House's continued interference with POLITICO's print pool assignments prevents POLITICO's journalists from covering the President in the Oval Office, aboard Air Force One, and at the other events that only pool members may attend. These are the primary settings in which the President speaks with reporters and answers questions about his

administration's policies and actions. Unless Defendants are enjoined, POLITICO will continue to miss those opportunities each time its turn in the rotation would otherwise arise.

11. Each assignment POLITICO is prevented from performing is coverage lost for good. A question a POLITICO reporter is not in the room to ask goes unanswered, and a trip POLITICO cannot take is one it cannot cover. That access, and the reporting that depends on it, cannot be replicated from outside those settings or recreated after the fact.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __31st__ day of _____October_________ 2026 in Washington, D.C.

JULIA MARSH

____________________________
Julia Marsh